John **BAPTIST VIE LE**, Appellant,

v.

The **STATE of Texas.**

No. 538–98.

Court of Criminal Appeals of Texas, En Banc.

May 19, 1999.

Tony Aninao, Houston, for appellant.

Kimberly Aperauch Stelter, Assist. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which MEYERS, MANSFIELD, PRICE, HOLLAND, WOMACK, and JOHNSON, J.J., joined.

When Detective N.P. Welsh arrested juvenile John Baptist Vie Le, he first took Le to a magistrate, who gave Le the required juvenile warnings. He then took Le directly to the homicide division of the police department, where he interviewed Le and obtained a statement from him. We must decide whether Detective Welsh's actions violated the Family Code. We conclude that they did.

### Facts

Babykutty John was shot to death when he answered a knock at his front door. The police investigation led to Le, a juvenile, as a suspect. Detective Welsh arrested Le and took him to the offices of a Houston city magistrate. The magistrate gave Le the required juvenile warnings with no one else present in the room. Le was then taken to the Houston Police Department homicide division, where Detective Welsh and another police officer interviewed him. He gave a statement admitting his part in the murder and attempted robbery of the victim, but he did not sign the statement at that time. Finally, Le was taken to another magistrate and given the warnings again. At that time he signed his statement, without any police officers being present.

Le was certified to stand trial as an adult and indicted by the grand jury for capital murder. He moved to suppress his written statement, but the trial court denied the motion. The statement was admitted at Le's trial. The jury found him guilty, and the court sentenced him, as required, to life in prison.[1]

Le presented three arguments for suppression to the trial court. First, he argued the statement was improperly obtained at the homicide division rather than a juvenile processing office. Second, he argued the procedures followed by the police violated this Court's opinion in *Comer, infra.* Finally, he relied on his written motion to suppress evidence, in which he contended the State failed to comply with the mandatory provisions of § 52.02(a)(2) and (3) of the Family Code.

On appeal, Le argued that the trial court erred in overruling his motion to suppress because Detective Welsh failed to bring him to an office or official designated by the juvenile court, or to a detention facility, as required by § 52.02(a)(2) and (3). The Court of Appeals rejected Le's claim. It noted that Le was taken to a designated juvenile processing office under § 52.025. The Court concluded that this satisfied § 52.02(a).[2]

### Arguments

Le claims that § 52.02(a) was violated when Detective Welsh took him to the homicide division and obtained a statement from him. Because Detective Welsh had probable cause to arrest him, Le argues, he was required to take Le "without unnecessary delay" to either an office or official designated by the juvenile court[3] or to a detention facility.[4] Le concedes he was first taken to a juvenile processing office under § 52.025. But he complains

that he was not then taken "without unnecessary delay" to either an office or official designated by the juvenile court or a detention facility—the only available options under § 52.02(a). Le also claims that any statement should have been obtained at the juvenile processing office, rather than the homicide division.

The State responds that Le was taken to a juvenile processing office first, so there was no violation of the Family Code. The State also argues that Le was not in custody at the time his statement was taken, so these statutes do not apply. But the State essentially conceded custody in the trial court. The prosecutor stated at the suppression hearing that "[t]here are strong indications that he was in custody but it is a determination to be made by the Court ..., but even if he was in custody they followed all of the requirements of the [Family Code]." The Court of Appeals assumed, without deciding, that Le was in custody. We will do the same.

### Statutes

Section 52.02(a) of the Family Code provides that a person who takes a child into custody shall, "without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025 of this code," do one of the following:

(1) release the child to a parent ...;

(2) bring the child before the office or official designated by the juvenile court if there is probable cause to believe that the child engaged in delinquent conduct or conduct indicating a need for supervision;

(3) bring the child to a detention facility designated by the juvenile court;

---

1. TEX. PEN.CODE ANN. § 12.31(a) (Vernon 1994); § 8.07(c) (Vernon Supp.1999).

2. *Le v. State,* No. 14–94–01265–CR, 1997 WL 665902 (Tex.App.—Houston [14 th Dist.] October 23, 1997).

3. TEX. FAM.CODE ANN. § 52.02(a)(2) (Vernon 1996).

4. TEX. FAM.CODE ANN. § 52.02(a)(3) (Vernon 1996).

(4) bring the child to a medical facility ...; or

(5) dispose of the case ...

Section 52.025 then provides, in relevant part, as follows:

(a) The juvenile court may designate an office or a room, which may be located in a police facility or sheriff's offices, as the juvenile processing office for the temporary detention of a child taken into custody ...

(b) A child may be detained in a juvenile processing office only for:

(1) the return of the child to the custody of a [parent] ...;

(2) the completion of essential forms and records required by the juvenile court or this title;

(3) the photographing and finger-printing of the child ...;

(4) the issuance of warnings to the child as required or permitted by this title; or

(5) the receipt of a statement by the child under Section 51.09(b) of this code.

### Analysis

▉▉▉ The starting point in analyzing the meaning of a statute is the statutory language.[5] When a statute is clear and unambiguous, we apply the plain meaning of its words.[6] On the other hand, when the words are ambiguous, or the plain meaning of the words would lead to an absurd result which the Legislature could not possibly have intended, we look to extratextual factors to ascertain the statute's meaning.[7]

Section 52.02(a) commands the officer taking the child into custody to "do one of the following" "without unnecessary delay" and "without first taking the child to any place." The statute provides only one ex-

ception. The officer *may* first take the child to "a juvenile processing office designated under Section 52.025." That is an option, but it is not a requirement. If the officer elects to take the child to a juvenile processing office, § 52.025 limits what may occur there. Only five things may occur, one of which is obtaining a statement from the child.

▉▉▉ Reading the two statutes in concert, the plain language reveals that a statement *may* be obtained at a juvenile processing office, but there is no requirement that this occur. Indeed, there is no requirement that the child be taken to a juvenile processing office at all. Rather, a juvenile processing office is the only place an officer can take the child *other than* the five options presented in § 52.02(a). It is, in essence, a sixth option. The taking of a juvenile to a juvenile processing office, however, does not dispense with the requirement that, subsequently, the officer, "without unnecessary delay," do one of the five possibilities listed in § 52.02(a).

Although the statute's plain language is clear in that respect, we do find some ambiguity in the phrase "designated juvenile processing office." Is this an office wholly separate from any of the five options listed in § 52.02(a), or could one office conceivably satisfy both § 52.025 and § 52.02(a)? For example, could one office simultaneously qualify as a juvenile processing office under § 52.025 and as an office or official designated by the juvenile court under § 52.02(a)(2)?

▉▉▉ The text of the two statutes does not completely resolve this question. But there is some indication that the two offices must be separate. Section 52.025(d) specifically limits the amount of time that a juvenile can spend in a processing office to six hours. There is no such time limit

**5.** *Brown v. State,* 943 S.W.2d 35, 36 (Tex. Crim.App.1997).

**6.** *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

**7.** *Ibid.*

on any of the options listed in § 52.02(a) ... and for good reason. The options in § 52.02(a) are essentially permanent options. Once taken to any of those places, the police officer's involvement in the case ceases. This is not so in § 52.025. The statutes contemplate that an officer may first, for a maximum of six hours, take a juvenile to a processing center for paperwork, but he then must take the child to one of the options in § 52.02(a). This implies that one office cannot satisfy both statutes.

But this alone is not enough to render the statute unambiguous. We therefore look to extratextual factors, as *Boykin* instructs us to do. Our review of the legislative history of § 52.025 provides some guidance. Senator Dickson sponsored Senate Bill 1230, which enacted § 52.025. He explained the bill to the Senate as follows:

> If a citizen who is a juvenile is arrested and charged with a crime, the statute, the Family Code, provides that he must be taken to a number of designated places, or, it provides that the officers have the right to take him to a number of designated places. Those include places such as his parents' home or to his custodian, to a juvenile detention center. That is not practical in many cases and the ordinary course of business is for juvenile officers who have arrested, or officers who have arrested juveniles, to take them for processing for a short period of time to *another facility*. This, there is some question as to whether that may be done in view of the designation of the various places where a juvenile can be taken. It is done as a matter of the ordinary course of a, of business. It seems appropriate that, in order to do the necessary paperwork, for a short period of time a juve-

nile might be taken to a processing center. That is what this bill does.[8]

Based on this explanation, it appears that the Legislature envisioned the "juvenile processing office" in § 52.025 was envisioned as little more than a temporary stop for completing necessary paperwork pursuant to the arrest. As Senator Dickson later explained, it is necessary simply in order for the juvenile's "name, rank, and serial number be taken." [9] The statute's express language reflects this intent, in that it authorizes detention at the processing office for the completion of paperwork.[10] Senator's Dickson's description of this place as "another facility" indicates that § 52.025 was intended to create a separate place for completing this paperwork, and that after doing so, the officers would then comply with § 52.02(a).

■ Given Senator Dickson's explanation of Senate Bill 1230, we find that a single office cannot simultaneously qualify as both a juvenile processing office under § 52.025 and an office or official designated by the juvenile court under § 52.02(a)(2).

### Application

■ Turning now to the facts of this case, Detective Welsh first took Le to a city magistrate, which, according to testimony presented at the hearing, had been designated by the juvenile court as a "juvenile processing office." This was permissible under § 52.025. He then took Le to the homicide division of the Houston police department to obtain a statement. There is nothing in the record to indicate that the homicide division was either an "office or official designated by the juvenile court" under § 52.02(a)(2) or a "detention facility designated by the juvenile court" under § 52.02(a)(3). Obviously, taking Le to the homicide division did not

---

**8.** 72 nd Legislative Session, May 9, 1991, Tape 2 of 3, Side 2 (emphasis added).

**9.** 72 nd Legislative Session, May 26, 1991, Tape 1 of 6, Side 1.

**10.** Tex. Fam.Code Ann. § 52.025(b)(2) (Vernon 1996).

satisfy the other options in § 52.02(a), as it did not constitute releasing him to his parent, bringing him to a medical facility, or disposing of the case. Upon leaving the juvenile processing office, Detective Welsh was required to do one of the five options listed in § 52.02(a) "without unnecessary delay." Taking Le to the homicide division did not constitute any of these five options. Detective Welsh violated the Family Code by his actions.

█ Le also argues that any statement obtained should have been obtained at the juvenile processing office. We disagree. As explained, obtaining a statement at a juvenile processing office is permissible but is not required. Detective Welsh's error was not in obtaining the statement at the homicide division; it was in doing so prematurely. He should have first, "without unnecessary delay," taken Le to a juvenile officer or detention facility. A juvenile officer could have, at that point, referred the case back to Detective Welsh for the purpose of obtaining a statement.

We recognized in *Comer v. State*[11] that the language of § 52.02 dictated what an officer *must* do "without unnecessary delay" when he takes a child into custody. We concluded that

> the clear intent of the statutory scheme as a whole ... from this point on [is that] the decision as to whether further detention is called for is to be made, not by law enforcement personnel, but by the intake or other authorized officer of the court ... [I]t appears that ... the Legislature intended to restrict involvement of law enforcement officers to the initial seizure and prompt release or commitment of the juvenile offender ...[12]

At the time we wrote *Comer*, § 52.02 provided the steps an officer must take "without unnecessary delay and without first taking the child anywhere else." In 1991, the Legislature changed that language to read: "without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025." The Legislature also added § 52.025, which defines a juvenile processing office and states what may occur there.

But these amendments had no effect on the clear intent of the statutory scheme. Today we reaffirm our decision in *Comer*. The Legislature has set forth very specific actions which a law enforcement officer must take when arresting a juvenile. We are aware of the disturbing increase in juvenile crime in our state, and we are sympathetic to law enforcement's efforts to deal with violent juvenile offenders. Nevertheless, we must not ignore the Legislature's mandatory provisions regarding the arrest of juveniles. We informed the citizenry, a decade ago in a unanimous opinion, of the Legislature's clear intent to reduce an officer's impact on a juvenile in custody. Today we remind police officers of the Family Code's strict requirements.

The State relies on *Beaver v. State*[13] to argue that the Family Code was followed. However, the issue in *Beaver* was whether the police officer had the authority to investigate the case and interview the juvenile, because the juvenile detention officer had not formally referred the case to law enforcement under § 52.04(b). The Court of Appeals held that no formal ceremony is required to constitute a referral, and under the facts of that case, a referral had occurred. *Beaver* does not alter our holding in *Comer* and is not relevant to this case.

The State also seems to argue that the initial taking of Le to the juvenile processing office dispensed with any need to then comply with § 52.02(a). We disagree. Section 52.025 does not "trump" § 52.02(a). The two statutes must be read

---

**11.** 776 S.W.2d 191, 194 (Tex.Crim.App.1989).

**12.** *Id.* at 194–95.

**13.** 824 S.W.2d 701 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd).

together. While § 52.025 presents another option for law enforcement personnel, this option's use does not dispense with the other Family Code requirements. Upon leaving the juvenile processing office with Le, Detective Welsh was required to follow § 52.02(a), and he did not.

## Conclusion

Illegally obtained evidence is inadmissible against the accused in a criminal case.[14] We have concluded that Le's statement was obtained in violation of the Family Code but was nevertheless admitted at his trial. The issue remains whether this error was harmful.[15] The Court of Appeals found no error in the admissibility of the statement, so it did not consider whether the admission of the statement harmed Le. Therefore, we must remand this case for consideration of this issue.

The judgment of the Court of Appeals is reversed and this cause is remanded to that court for proceedings consistent with this opinion.

McCORMICK, P.J., filed a dissenting opinion in which KELLER, J., joined.

I respectfully dissent. I would either dismiss the petition for discretionary review as improvidently granted or affirm the judgment of the Court of Appeals on the merits.

I believe the Court's opinion reverses on an issue that is not fairly presented in appellant's discretionary review petition and that was uncontested in the Court of Appeals and during the suppression hearing in the trial court. Although appellant's claims are not very clearly set out in either his discretionary review petition or his brief, his essential complaint seems to be the police violated his Family Code rights not by failing to bring him to an "office or official designated by the juvenile court" but by taking his statement at a non-juvenile facility. Appellant seems to claim

that any statement by a juvenile *must always* be obtained at a juvenile facility and that any statement obtained at a non-juvenile facility must be suppressed.

In other cases like this we have dismissed discretionary review petitions as improvidently granted. See, e.g., *State v. Consaul,* 982 S.W.2d 899 (Tex.Cr.App. 1998), and at 900–03 (Price, J., concurring) (state's petition for discretionary review dismissed because, among other things, state never made argument it made in its petition for discretionary review in either the trial court or the Court of Appeals). And, unlike the situation in *Consaul* where the dismissed issue was fairly presented in the state's discretionary review petition, the Court reverses this case on an issue not fairly presented in appellant's discretionary review petition. See *Consaul,* 982 S.W.2d at 903–04 (Keller, J., dissenting) (having exercised its discretion to grant the discretionary review petition, the Court should have addressed the issue fairly presented in it). I would dismiss this discretionary review petition as improvidently granted.

The merits of this case also require a holding that the police and all the other state actors involved in the taking of appellant's statement scrupulously honored appellant's rights under the Family Code. After arresting appellant, the officer immediately, "without unnecessary delay" and "without first taking" appellant anywhere else brought appellant before the magistrate. The magistrate gave appellant the "required juvenile warnings." After all this, the police obtained appellant's voluntary statement at the homicide division. *The police immediately brought appellant before another magistrate at which time appellant after having been warned again by the magistrate signed the statement with no police officers present.* See Section 51.09(b)G), Texas Family Code.

The Court's opinion decides appellant's statement should have been suppressed

14. Tex.Crim. Proc.Code Ann. Art. 38.23(a).

15. Tex.R.App. P. 44.2.

because the officer did not bring him to an "office or official designated by the juvenile court"[1] or to a "detention facility designated by the juvenile court"[2] after the officer had taken appellant before the magistrate whom the juvenile court had designated as a "juvenile processing office" under Section 52.025(a), Texas Family Code. The Court decides the officer failed to comply with either Section 52.02(a)(2) or Section 52.02(a)(3).

However, there is evidence in the record to support a finding the magistrate was a "juvenile processing office" under Section 52.025(a) *and* an "official designated by the juvenile court" under Section 52.02(a)(2).[3] Therefore, the officer complied with Section 52.02(a)(2) when he brought appellant before the magistrate.

The Court of Appeals' opinion also states this magistrate was "a designated juvenile processing office for purposes of sections 52.02 and 52.025." See *Le v. State*, Slip op. at 6, No. 14–94–01265–CR, 1997 WL 665902 (Tex.App.—Houston [14 th Dist.] October 23, 1997) (nonpublished). Appellant did not claim otherwise in the Court of Appeals. See *id.*, slip op. at 5 (appellant contended Section 52.02(a), Texas Family Code, was violated "because, after being given his warnings by the magistrate, appellant was taken to and detained at the homicide division of the Harris County Sheriff's office, an undesignated area for juvenile processing purposes, *rather than to the Sheriff's designated juvenile processing office* "). (Emphasis Supplied).

Appellant also did not claim otherwise during the suppression hearing in the trial court.[4] After the presentation of the uncontested facts relating to the taking of appellant's statement, appellant's essential claim to the trial court during the suppression hearing was that his statement should have been taken at a "juvenile processing center" instead of the homicide division.

"[APPELLANT]: Your Honor, as far as argument is concerned, your Honor, first of all, we would adopt each and every grounds that we state in our written motion to suppress *but I think your (sic) my strongest ground which I would like or urge at this time has to do with the whole matter of what constitutes a juvenile processing center and where the statement was taken* and I anticipate that the State is going to say that this procedure that was undertaken is okay because [appellant] was first taken to the municipal court where he was duly warned by a magistrate and then the written statement was taken and furthermore, that that was a sufficiently legal procedure because a magistrate's office, specifically the Houston municipal court magistrate office, is a proper juvenile processing center for purposes of the statute.

"Now, I believe the control provisions in this case, your Honor, is Article 52.02 of the Texas Family Code which relates to release or delivery to the Court of requiring that the child first be brought before an office or official designated by a juvenile court if there is probable cause to believe what (sic) the child engaged in conduct indicating a need for supervision. Similarly, Article 3 provides that without unnecessary delay without first taking the child to any other place other than a juvenile processing office, provision 3 of 52.02(a) says that they must bring the child to a detention facility designated by the juvenile court.

"Now, I think, your Honor, that that particular statute, 52.02, must be read in conjunction with the next statute, namely 52.025 which is called designation of juvenile processing office. Specifically

---

1.  See Section 52.02(a)(2), Texas Family Code.

2.  See Section 52.02(a)(3), Texas Family Code.

3.  See State's Exhibit 3 from the suppression hearing.

4.  See Tr. at 237; S.F., Vol. 4 at 88–93.

that provision, subsection specifically B of 52.025 provides that one of the purposes in bringing a juvenile to a juvenile processing office is for purposes of a, says the receipt of a statement by the child under section 51.09(b) of this Code. *I suppose, your Honor, the clearest way that I can express our complaint is in the fact that [appellant's] statement was taken at the homicide division at 601 Lockwood which is not a juvenile processing center. I think, your Honor, the record is clear that he was first taken to a magistrate for his warnings. In fact, if that had not been done I think the State would be in further trouble.* However, there is a case called Comer (spelled phonetically) versus State which I have a copy right here, if I can approach the Bench, which Mr. Owmby is more than aware of because he has been talking about it with the interns continuously throughout the morning, probably have his own comments about it, but our position, your Honor, is that this case supports our position that the procedure used in this case contradicts the relevant provisions of the Texas Family Code, and you know, I would just ask for the Court to have an opportunity to read that particular case, your Honor, and grant the motion to suppress, the written statement, juvenile statement.

"[COURT]: Mr. Owmby.

"[STATE]: *What the Code says is that without any unnecessary delay and without first taking the child to any other place other than a juvenile processing office designated under 52.025. They did that, your Honor. They took him to a place designated under 52.025 for juvenile processing facility. They did that first. They also took him before the office or official designated by the juvenile court if there is probable cause to believe [pursuant to section 52.02(a)(2) ]. They took him to that magistrate that is also designated and under 52.05(sic).* They couldn't have done anything other than what the law pre-scribes, which they did. *There are strong indications that he was in custody but it is a determination to be made by the Court under all the circumstances not just the defendant's subjectively but the officer, whether they had probable cause, whether he was the focus, but even if he was in custody they followed all of the requirements of the juvenile court and the officer has stated he had reasonable cause to believe he engaged in delinquent conduct and stated those reasons.* There is no reason why this confession is not admissible. They could not have done a better, more good faith job, however, precisely following what the law sets out for them to do.

"[APPELLANT]: Judge, the specific provisions of the Comer a case; in fact, the specific language in, in on page 196 near the end, particular decision where the Court of Criminal Appeals specifically says in our view the Legislature intended that the officer designated by the juvenile court making the initial decision whether to subject the child to custodial—I don't have to read it to the Court, your Honor. I know the Court can read and I'm not here to insult the Court's intelligence; however, I don't want to waste the time in quoting the language in this. However, I do believe, quite earnestly believe that this is a substantial issue and there is very strong language in this opinion *which supports our position that the statement of the juvenile, respondent and accused that was taken of the accused in this case should have been taken not at the homicide division.* I have no quarrel with a homicide detective or anybody else taking a statement from any juvenile accused. That can be, you know, it's not our position that no statement can ever been taken by a juvenile. Our position is that the specific provisions of law which are required to be followed were not followed in this case. I think the whole statutory provisions basically giving more protection to juveniles is one that was recognized by the Legislature

and in this particular context this is part and parcel of giving more protection to a juvenile respondent who at that young age, however, 14, 15, 16 years old, is perhaps more likely to suffer the kind of intimidation and nervousness and apprehension that perhaps a more mature person, 21, 25 or 28 might feel. So, your Honor, it, in all earnestness I think this is a very strong and substantial issue, non-frivolous, and I think there is specific language in this decision which supports our position.

"[STATE]: Your Honor, we would like to know note though *what the Comer case actually holds is you can't take a juvenile to a magistrate's house unless it's designated. That's not the case here,* about what the Legislature may have intended is there. What the officers have to do is follow what is written in the law and as interpreted by the Court and that's what the Court said in Comer and that's what they did.

"[APPELLANT]: *601 Lockwood [the homicide division] is not designated here. That's the point.*

"[COURT]: The Court has heard enough. The motion to suppress is denied." (Emphasis Supplied).

In addition, the Court of Appeals correctly analyzed the claim appellant asserted there and in the trial court when it decided that although "section 52.025(b)(5)[ [5]] *allows* a child to be kept at a juvenile processing office for the receipt of a statement under section 51.09(b),[ [6]] it does not *require* it." *Le,* No. 14–94–01265–CR., Slip op. at 6 (emphasis in original); see also *Le,* —— S.W.2d at —— ("a statement *may* be obtained at a juvenile processing office, but there is no requirement that this occur") (emphasis in original). As this Court recognized in *Comer,* the clear legislative intent of the Family Code's statutory scheme is "to restrict involvement of law enforcement officers to

the initial seizure and prompt release or commitment of juvenile offenders". See *Comer,* 776 S.W.2d at 194. That was done here.

Finally, I do not understand the Court's opinion to preclude the Court of Appeals from considering on remand the custody issue. The State did not necessarily concede the custody issue during the suppression hearing in the trial court. The Court of Appeals did not decide the custody issue. And, since appellant lost in the trial court with no findings of fact made by the trial court, the Court of Appeals must presume the trial court resolved adversely to appellant any disputed fact issues on the custody issue. See *State v. Munoz,* 991 S.W.2d 818, 821–22 (Tex.Cr.App.1999); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Cr.App.1997).

I respectfully dissent.

KELLER, J., delivered a dissenting opinion.

I agree with Presiding Judge McCormick and join his dissenting opinion: the issue on which the majority opinion rests was not the issue debated in the trial court or the Court of Appeals. There are a couple more matters, though, that are worth mentioning.

The reason the record is ambiguous about whether the magistrate was a designated official under § 52.02(a)(2) is that appellant did not argue that he wasn't. The State established unequivocally that the statement met the admissibility requirements of § 51.095, and the State established compliance with § 52.025. The State had no reason, and no burden, to establish compliance with § 52.02(a)(2) because appellant argued a different basis for exclusion. So, it is not surprising that the record is less than satisfactory regarding compliance with that statute.

Nevertheless, there are indications in the record that police complied with

---

**5.** See Section 52.025(b)(5), Texas Family Code.

**6.** See Section 51.09(b), Texas Family Code.

§ 52.02(a)(2). Aside from the prosecutor's unchallenged statement that the magistrate was designated under that statute, there is testimony that, while undeniably ambiguous, could support a conclusion that the magistrate was designated under § 52.02(a)(2):

Q: Is your office designated by the Board of Juvenile Courts as a place where juveniles are first to be taken if they were taken into custody?

A: Yes, it is.

Although the question could have—even probably—referred to designation under § 52.025, that is not the only possible meaning of the testimony. Because the trial court ruled against appellant, we defer to implied findings that support that ruling. See *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997).

I disagree with the majority that the legislative history of § 52.025 indicates an intent that one place cannot be designated under both statutes. "Another facility" is spoken of by Senator Dickson in the context of being a place other than the parents' home, the custodian, and the detention center, which, of course, it would be. There is, though, nothing in his statement that addresses whether a place that is designated under subsection (2) of § 52.02(a) could also be designated under § 52.025. And it seems logical that it could. Moreover, § 52.02(a)(2) authorizes designation not just of places, but of people. There is nothing in the legislative history that would lead me to conclude that a magistrate who had been designated under § 52.02(a)(2) could not perform his duties at a place designated under § 52.025.

Another reason I would dismiss the petition or affirm the judgment below is appellant's failure to articulate reliance on Art. 38.23, Tex.Code Crim. Proc. Ann. Appellant's statement was admissible under the statute that expressly provides the conditions for admissibility of a child's statement (§ 51.095 *Admissibility of a Statement of a Child* ). Absent the mechanism of our statutory exclusionary rule, non-compliance with § 52.02(a)(2) would not cause a statement to become inadmissible. Though one could imply reliance on Art. 38.23, appellant did not actually or explicitly argue that statute. Since the trial court resolved the admissibility issue contrary to appellant, we should not reverse that decision on the basis of a claim that was, at best, only impliedly made.

And finally, the Court of Appeals has not determined the issue of custody. Though the majority finds that the State, at trial, essentially conceded custody, it appears to me that they did not. The prosecutor conceded that there were strong indications of custody, but he explicitly left the determination of the matter to the trial court. Several pages of the State's briefs in both the Court of Appeals and in our Court are spent arguing that appellant was not in custody. More important, the Court of Appeals assumed but expressly did not decide the custody issue. Since the majority determines that the Court of Appeals erred in its resolution of the issue the court did decide the case on, we ought to remand the case to them to decide the custody issue.

I respectfully dissent.