**Patrick Cornell VANN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–01–00544–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 27, 2002.

Carol M. Cameron, Houston, Karen Zellars, Spring, for appellant.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## OPINION

SCOTT BRISTER, Chief Justice.

Appellant Patrick Cornell Vann was certified to stand trial as an adult for capital murder, found guilty by a jury, and given a mandatory life sentence. *See* TEX. PEN. CODE §§ 8.07(c), 12.31(a). He now appeals the trial court's ruling on his motion to suppress a firearm and a statement he made in police custody. We affirm.

On November 30, 1999, appellant (who was fifteen at the time) and an accomplice robbed a convenience store. In the course of the robbery, appellant shot and killed the clerk. The following day, appellant used the same handgun in an unrelated shooting. He then fled to his aunt's house—where he often stayed—changed his bloody clothes, and hid the handgun in an old refrigerator in the backyard before departing again.

Witnesses to the second shooting knew appellant, and shortly after he left his aunt's house, police arrived looking for him. The officers obtained the consent of Leticia Vann, appellant's twenty-five-year-old cousin (the daughter of his aunt), to search for him, and found the handgun in the backyard refrigerator.

A few hours later, police arrested appellant for the second shooting. Because his cousin had seen him enter her house wearing bloody clothes, she also went to the police station to give a statement. After a magistrate gave appellant his juvenile warnings, detectives separately interviewed appellant and Leticia. In his statement, appellant admitted placing the hand-

gun in the refrigerator.[1] When appellant went before the magistrate again and signed his statement, the detective who interviewed appellant told Leticia what was occurring. By that point, appellant had been in police custody about two and one-half hours. Officers in the juvenile division contacted appellant's mother sometime later.

At the hearing on his motion to suppress, appellant attempted to exclude (1) his statement under the Texas exclusionary rule,[2] based on a violation of Family Code section 52.02(b), and (2) the handgun (proven to have been used in both shootings), based on a warrantless search that allegedly exceeded the scope of consent. The trial court denied the motion to suppress.

### *Standard of Review*

■■■ In reviewing the trial court's ruling on a motion to suppress, we afford almost total deference to a trial court's determination of historical facts, and if no fact findings are filed we presume the trial court made implicit findings of fact that support its ruling, provided these facts are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). We review de novo application-of-law-to-fact questions that do not turn on an evaluation of credibility and demeanor. *Id.* at 856. Because both questions at issue fall into this category, we will view the evidence in the light most favorable to the trial court's ruling and review de novo the trial court's resolution of both questions. *See Contreras v. State*, 67 S.W.3d 181, 185 (Tex.Crim.App.2001) (applying de novo review to determine if forty-five-minute delay was "un-

necessary" under 52.02(a)); *In re C.R.*, 995 S.W.2d 778, 783 (Tex.App.-Austin 1999, pet. denied) (applying de novo review to question of compliance with 52.02(b)); *Simpson v. State*, 29 S.W.3d 324, 327, 330 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (setting out de novo standard in case involving scope of consent to search).

### *Whom to Notify*

■■■ In his first point of error, appellant contends his statement was obtained in violation of Family Code section 52.02(b). That section requires a person taking a juvenile into custody to "promptly give notice of his action and a statement of the reason for taking the child into custody, to ... the child's parent, guardian, or custodian." Tex. Fam.Code § 52.02(b). Once a juvenile produces evidence that section 52.02 was violated, the burden shifts to the State to show compliance. *See Roquemore v. State*, 60 S.W.3d 862, 869 (Tex.Crim.App.2001). Appellant does not take issue with the content of the officer's notification. Instead, he argues that the notice was not prompt and the officers should have given notice to his mother instead of his adult cousin.

The State argues that Leticia Vann qualified as appellant's "custodian." The Code defines this term as "the adult with whom the child resides." Tex. Fam.Code § 51.02(3). It is clear from the record before us that appellant did not have a single, fixed residence. Testimony indicated that officers had contacted appellant's mother on an earlier occasion, at which time she told the police that appellant "stayed where and when he wanted." It is also clear that appellant's cousin Leticia

---

1. Appellant's statement did not mention the convenience store robbery or murder. Although it had occurred the day before, police did not question appellant about the murder

because they did not yet consider him a suspect in that case.

2. Tex.Code Crim. Proc. Ann art. 38.23(a) (Vernon Supp.2002).

was the principal adult in the home where he often resided. Leticia's mother (appellant's aunt) raised him since he was two weeks old. Appellant had his own bedroom at the house and kept belongings there. Leticia was the adult who was most often at that home, and reported that appellant lived with her and her mother most of the time. At the time police took appellant into custody, he was still "in and out" of Leticia's home, although he was supposed to be living with his mother. Appellant's written statement confirmed that he lived with his mother but sometimes spent the night at his aunt's house.

Viewing the evidence in the light most favorable to the trial court's ruling,[3] we find appellant's cousin Leticia qualifies as his "custodian" within the meaning of the Code, and find under the circumstances of this case that notice to her complied with section 52.02(b).

### When to Notify

■ Appellant also argues in point of error one that the police violated section 52.02(b) because their notification was not prompt. In resolving this issue, other courts have considered (1) the length of time the juvenile had been in custody before the police notified a parent, guardian, or custodian; (2) whether notification occurred after the police obtained a statement; (3) the ease with which the police were ultimately able to contact the appropriate adult; and (4) what the police did during the period of delay.[4]

Here, the delay was approximately two and one-half hours long, and although officers could have notified Leticia earlier, they waited until appellant was being taken before a magistrate to sign his written statement.[5] But Leticia was present when the police apprehended and arrested appellant. She witnessed his attempt to hide evidence and advised him to turn himself in to the police. She was also present at the police station and knew when appellant was giving a statement to the police.[6]

■ In order for evidence to be excluded under Code of Criminal Procedure article 38.23, there must be a causal connection between the illegal conduct and the acquisition of evidence. *Gonzales v. State,* 67 S.W.3d 910, 912 (Tex.Crim.App.2002); *Roquemore v. State,* 60 S.W.3d 862, 870–71 (Tex.Crim.App.2001) (finding causal connection when, but for violation of § 52.02(a), the police would not have obtained evidence when they did). Here, we

---

3. *See Contreras,* 67 S.W.3d at 185–86.

4. *See, e.g., Gonzales v. State,* 67 S.W.3d 910, 911 (Tex.Crim.App.2002) (noting five to six-hour delay in notification that came only after juvenile was processed into detention facility); *Hampton v. State,* 36 S.W.3d 921, 924 (Tex. App.-El Paso 2001, pet. granted) (finding delay violated § 52.02(b) when notification was delayed until juvenile was giving statement); *Hill v. State,* 78 S.W.3d 374, 382–84 (Tex. App.-Tyler 2001, pet. ref'd) (finding four hour and twenty-minute delay not prompt when officers waited until after juvenile confessed, and reached mother on first attempt at contact); *In re C.R.,* 995 S.W.2d 778, 783 (Tex. App.-Austin 1999, pet. denied) (declining to hold one or two-hour delay alone would violate § 52.02(b)).

5. The State argues that according to the record, the officers notified Leticia *before* they interviewed him. The officer's testimony that the State relies on, however, at best suggests that he notified Leticia *either* before or sometime during the hour he spent with appellant. The same officer later said he notified Leticia "as [appellant] was being brought back to the magistrate" for the second time.

6. Because she was present, the facts here are unlike those in *Comer v. State,* 776 S.W.2d 191, 196–97 (Tex.Crim.App.1989), in which the Court found the violation of section 52.02(a) may have affected the juvenile's decision to confess.

find no causal link between the delay in notifying Leticia and appellant's statement. Consequently, the trial court properly denied appellant's motion to suppress the statement made in custody. We overrule appellant's first point of error.

The discussion of the issues two and three does not meet the criteria for publication set forth in Texas Rule of Appellate Procedure 47.4. Accordingly, the remainder of the opinion is not designated for publication.

We affirm the judgment of the trial court.

* * * * * *UNPUBLISHED TEXT
FOLLOWS* * * * * *

* * * * * *END OF UNPUBLISHED
TEXT* * * * * *