86 S.W.3d 810 (2002)
In the Matter of J.B.J., a Juvenile.
No. 09-01-382 CV.
Court of Appeals of Texas, Beaumont.
Submitted June 25, 2002.
Decided September 26, 2002.
*811 Jarrod L. Walker, Riley, Walker, Dornburg, Little & Wham, Conroe, for appellant.
David K. Walker, County Atty., William L. Pattillo III, Asst. County Atty., Conroe, for appellee.
Before WALKER, C.J., BURGESS, and GAULTNEY, JJ.

OPINION
DAVID B. GAULTNEY, Justice.
The trial court adjudicated a fourteen year old juvenile as having engaged in delinquent conductthe second degree felony offense of indecency with a childand sentenced him to probation until the age of eighteen. See Tex. Pen.Code Ann. § 21.11(a), (d) (Vernon Supp.2002). On appeal, appellant ("JBJ") contends the trial court erred in failing to suppress a confession he made while in custody. The issue in this case is whether the parents of the juvenile were promptly notified after he was taken into custody as required by Section 52.02(b)(1) of the Texas Family Code.

FACTS
Detective Page of the Montgomery County Sheriff's Department testified that on November 22, 2000, she received a report containing allegations of criminal conduct by JBJ, a juvenile, against a five year old child ("SW"). On January 8, 2001, Detective Page, along with another detective from the Montgomery County Sheriff's Department, went to the school security office and asked to speak with JBJ. School officials called JBJ to the school's police office. Detective Page testified she then told JBJ she had a report of his involvement in inappropriate touching of SW and asked him if he would come with her because she wanted to speak with him. JBJ responded "yes." Officer Tammy *812 Trott, an employee of the Conroe Independent School District Police, testified that Detective Page's interview of JBJ at the school's security office was "very brief because basically he confessed to what she asked."
Upon leaving the school, the two Sheriff Department detectives transported JBJ by car to the office of Judge Spikes, a justice of the peace. Judge Spikes provided JBJ his juvenile warnings pursuant to the requirements of the Family Code. See Tex. Fam.Code Ann. § 51.095 (Vernon Supp. 2002). After the initial warnings were given, Detective Page took JBJ to an empty office at the detective bureau and spoke with him. It was then that JBJ made a written confession. Once the written statement was completed, Page took JBJ back to Judge Spikes. With only himself and JBJ in the room, Judge Spikes completed the statutory warnings required for the admissibility of a statement of a juvenile. See Tex. Fam.Code Ann. § 51.095(a)(1)(B) (Vernon Supp.2002). Detective Page testified that she then took JBJ to the ID Division and had him fingerprinted. At that point, he was taken to the juvenile facility and released to the authorities there.
Officer Trott described the efforts made to contact JBJ's parents. She explained that the school has phone numbers in the computer systemboth residence and work numbers. Trott told Detective Page she would try to contact JBJ's mother. JBJ gave Trott a residence number and told her that his mother would be out. Trott began making phone calls to try to reach the mother. Before the detectives left the school with JBJ, Trott told Detective Page that she (Trott) would continue her efforts to reach a parent until contact was made. For approximately an hour, Trott made six attempts to call the mother but was unable to reach her. Since the mother had not returned home, Trott then tried the father's work number. She reached a secretary, who indicated she would have the father call back. JBJ's father returned Trott's call in five or ten minutes, and Trott explained to him why his son had been taken into custody. Later that afternoon, the mother, who was very upset, contacted Trott and told Trott never to speak to JBJ again.
The State filed a petition asking that JBJ be adjudicated as a child engaged in delinquent conduct. Appellant filed a motion to suppress all oral and written statements he had made in reference to the case. At the suppression hearing, there was, in addition to the evidence recounted above, testimony regarding the following time chronology surrounding the making of the written statement:
(1) Detective Page picked JBJ up at school at 10:40 a.m. and arrived at the sheriff's department a couple of minutes before 11 a.m.
(2) Judge Spikes gave JBJ the first warnings at 11:05 a.m.
(3) Page took JBJ to her office (across the hall from Judge Spikes' office), where JBJ completed his statement by 12:30 p.m.
(4) At approximately 12:22 p.m., while Page was in the interview with JBJ, a phone call came for Page from JBJ's mother. However, Page did not know of the mother's call until after the interview and statement were completed.
(5) JBJ was taken to the juvenile facility around 1:15 p.m.
(6) Around 1:30 p.m. Page learned the mother had telephoned, and at that time Page returned her call and informed her of the allegations against JBJ and his confession.
From the record as a whole, it appears there was an approximate one and one-half *813 hour time period between the juvenile's being taken into custody and the notification of the father.
The trial court denied the motion to suppress, and, based on an agreed statement of facts and stipulation of evidence, ultimately adjudicated JBJ as having engaged in delinquent conduct by committing the offense of indecency with a child. Pursuant to Tex. Fam.Code Ann. § 56.01(n)(2) (Vernon Supp.2002), the juvenile has a statutory right under certain circumstances to appeal the denial of the motion to suppress, regardless of his subsequent stipulation.

STANDARD OF REVIEW
As with a motion to suppress in an adult criminal case, we review a motion to suppress in a juvenile delinquency proceeding under an abuse of discretion standard. See In the Matter of R.J.H., 79 S.W.3d 1, 6-7, 45 Tex. Sup.Ct. J. 732 (2002). When there are no findings of fact, an appellate court reviews the record in the light most favorable to the trial judge's ruling. Id. A reviewing court defers to the trial court's findings of historical fact but, considering all of the surrounding circumstances, determines de novo the application of law to the facts. See id.

REQUIREMENTS OF TEXAS FAMILY CODE
Under Texas law, a person taking a child into custody must promptly notify the child's parent, guardian, or custodian of that fact and of the reason for taking the child into custody. See Tex. Fam.Code Ann. § 52.02(b)(1) (Vernon Supp.2002). JBJ contends the officers took him into custody upon leaving the school, which the State concedes, and failed to promptly notify a parent, a point that the State challenges. JBJ claims that the violation of the statute renders his confession inadmissible, and that the trial court should have granted his motion to suppress.
The juvenile has the burden to raise non-compliance with the Family Code's requirements. See Hill v. State, 78 S.W.3d 374, 382-83 (Tex.App.-Tyler 2001, pet. ref'd). Once the juvenile raises the issue, the State has the burden to demonstrate compliance. See In re C.R., 995 S.W.2d 778, 783 (Tex.App.-Austin 1999, pet. denied).

APPLICATION OF LAW TO THE FACTS
JBJ claims the officers violated Section 52.02(b)(1). No violation of his constitutional rights or of any other statutory provision is claimed on appeal.[1] JBJ argues only that a parent was not "promptly notified" when he was taken into custody, and for that reason his confession should have *814 been suppressed. We are required to decide whether an approximate hour and a half time frame meets the prompt notification requirement of the Texas Family Code.
The Family Code does not provide us with a definition of "promptly" in this context. We look first to the meaning of "promptly" as the word is commonly used. See Tex. Gov't Code Ann. § 311.011(a) (Vernon 1998). The adjective "prompt" generally means "ready and quick to act as occasion demands; immediately or instantly at hand." See Webster's New Universal Unabridged Dictionary 1441 (2nd ed. 1983). Black's Law Dictionary defines the adverb "promptly" as doing something "without delay" and "with reasonable speed." See Black's Law Dictionary 1214 (6th ed. 1990). These definitions suggest the meaning of the word "promptly" in Section 52.02(b) includes consideration of what is reasonable speed under the circumstances.
We note that the words "prompt" or "promptly" are employed in other sections of the Juvenile Justice Code. For example, on referral of a child's case to the office designated by the juvenile court, the office shall promptly give notice of the referral and a statement of the reason for the referral to the child's parents. TEX. FAM. CODE ANN. § 52.04(d) (Vernon Supp.2002). In Section 53.01, the Code provides that "[w]hen custody of a child is given to the office or official designated by the juvenile board, the intake officer, probation officer, or other person authorized by the court shall promptly give notice of the whereabouts of the child and a statement of the reason the child was taken into custody to the child's parent, guardian, or custodian unless the notice given under Section 52.02(b) provided fair notice of the child's present whereabouts." Tex. Fam.Code Ann. § 53.01(c) (Vernon Supp.2002). In Section 53.012(a), the prosecutor is required to promptly review the circumstances and allegations of a referral. Tex. Fam.Code Ann. § 53.012(a) (Vernon 1996).
In contrast to these uses of the word "promptly," the Juvenile Justice Code also contains a section that provides that a detention hearing, subject to certain exceptions, shall be held "promptly, but not later than the second working day after the child is taken into custody[.]" See TEX. FAM.CODE ANN. § 54.01(a) (Vernon Supp. 2002). The fact that the parental notification provision, Section 52.02(b), gives no specific time deadline suggests that a determination of whether notification was "promptly" given requires consideration of the circumstances of the specific case. See Roquemore v. State, 60 S.W.3d 862, 870 n. 11 (Tex.Crim.App.2001) (A strict interpretation of Section 52.02 would not necessarily foreclose a case where exigent circumstances would apply). We believe courts must determine what constitutes prompt parental notification as required by Section 52.02(b)(1) by determining whether, considering the circumstances of the particular case, the notification was with reasonable speed. See generally Vann v. State, No. 14-01-00544-CR, 2002 WL 1462901, at *2, ___ S.W.3d ___, ___ (Tex.App.-Houston [14th Dist.] June 27, 2002, no pet h.).
In Vann, the court cited the following four factors that have been considered by other courts in determining whether parental notification was prompt under the circumstances of a particular case: (1) the length of time the juvenile was in custody before the police notified a parent, guardian, or custodian; (2) whether notification occurred after the police obtained a statement; (3) the ease with which the police were ultimately able to contact the appropriate adult; and (4) what the police did during the period of delay. Id. at *2, ___ S.W.3d at ___. We note some of the factors *815 considered by other courts seem targeted at assessing whether the parental notification attempts were made in good faith or were reasonable under the circumstances. In determining whether parental notification was given with reasonable speed under the circumstances, we believe the factors noted in Vann are relevant considerations.
The Court of Criminal Appeals has emphasized the necessity of strict compliance with the Texas Family Code provisions regarding juveniles. See Baptist Vie Le v. State, 993 S.W.2d 650, 656 (Tex. Crim.App.1999) (The Court "remind[ed] police officers of the Family Code's strict requirements" regarding juveniles.). Specifically, the parental notification requirement of Section 52.02(b) has been the subject of court decisions in criminal cases, where courts generally have strictly applied the requirement. See Gonzales v. State, 67 S.W.3d 910 (Tex.Crim.App.2002) (because of violation of section 52.02(a), case remanded for causal connection analysis by court of appeals); Pham v. State, 72 S.W.3d 346 (Tex.Crim.App.2002) (remanding for causal connection analysis because of section 52.02(b) violation). And we note that violation of the parental notification requirement, along with its effect on the admissibility of confessions of juveniles, has also been the subject recently of various courts of appeals decisions. See Vann, 2002 WL 1462901, ___ S.W.3d ___; State v. Simpson, 51 S.W.3d 633 (Tex. App.-Tyler 2000), judgment vacated and remanded, 74 S.W.3d 408 (Tex.Crim.App. 2002); see also In the Matter of C.R., 995 S.W.2d 778. The parental notification statute requires strict compliance. However, we do not believe that the necessity for strict compliance precludes our consideration of the totality of the circumstances or of the reasonableness of the efforts to notify the parents. We conclude these considerations are within the meaning of the word "promptly" as used in Section 52.02(b).
Here, the parental notification responsibility was delegated by Detective Page to the C.I.S.D. police officer. We recognize that delegation of the parental notification responsibility to another officer may be necessary, and in fact may result in faster parental notification; but once the notification requirement is delegated to another officer, that officer must comply with the requirements of Section 52.02(b). See generally Horton v. State, 78 S.W.3d 701, 705-06 (Tex.App.-Austin 2002, no pet. h.) (allowing arresting officer to delegate duty of parental notice to another officer.).
We conclude, considering the reasonable speed exercised under the circumstances of this case, the parental notification here was prompt. We view the evidence in a light most favorable to the trial court's ruling when, as here, there are no findings of fact. See In the Matter of R.J.H., 79 S.W.3d 1, 6-7, 45 Tex. Sup.Ct. J. 732. Before being taken into custody by Detective Page, J.B.J. "confessed to what she asked." The juvenile then gave the school officer his residence number. JBJ told the officer his mother was not at home. The officer repeatedly tried to call the mother. When the mother still had not arrived home, the officer then called the father at work. Contact was made at that point with a parentapproximately one hour and a half after JBJ was taken into custody. No evidence suggests the attempts to notify the child's parents were less than good faith efforts. No claim is made here of a violation of constitutional rights or of a violation of some other statutory provision. It is undisputed that the confession was taken in compliance with the requirements of Section 51.095, which governs the admissibility of a statement of a child. See Tex. Fam.Code § 51.095 (Vernon Supp. *816 2002). Considering the totality of the circumstances in this case and applying the law to the facts, we conclude no violation of Section 52.02(b) occurred.
Appellant's issue is overruled. The order adjudicating JBJ as having engaged in delinquent conduct is affirmed.
AFFIRMED.
DON BURGESS, Justice, concurring.
I concur in the result, but respectfully disagree with the majority's analysis. The majority's analysis is strained in two aspects: the determination that the parental notification was promptly made, as required by the statute, and the use of the "totality of the circumstances" construct in making that determination.

THE PROMPTNESS ISSUE
The majority states:
Before being taken into custody by Detective Page, JBJ "confessed to what she asked." The juvenile then gave the school officer his residence number. JBJ told the officer his mother was not at home. The officer repeatedly tried to call the mother. When the mother still had not arrived home, the officer then called the father at work. Contact was made at that point with a parentapproximately one hour and a half after JBJ was taken into custody.
The majority then concludes: "No evidence suggests the attempts to notify the child's parents were less than good faith efforts." I realize the concept of "good faith" is somewhat subjective, but I find the evidence shows, clearly and convincingly, the absence of good faith. After being told by the juvenile that his mother was not home, the school officer attempted six calls to the mother, over an hour's time, before she called the father's work number. On that first attempt, she reached a secretary and the father returned the call in five to ten minutes. Assuming, for the sake of argument, it was reasonable for the school officer to suspect that JBJ was being deceitful in saying his mother was not home; then it was reasonable to call the number. However, when the mother did not answer, was it reasonable to call five additional times before calling the father? I think not.
The majority states the factors enumerated in Vann v. State, No. 14-01-00544-CR, 2002 WL 1462901, at *2, ___ S.W.3d ___, ___ (Tex.App.-Houston [14th Dist.] June 27, 2002, no pet. h.), are relevant considerations. I agree. Below is comparison of the factors and the corresponding action in this case:

 Factor Action
(1) the length of time in custody before notification Six calls over 60-90 minutes
(2) whether notification occurred after police obtained Yes
 a statement
(3) the ease in ultimately contacting a parent Two calls over 10 minutes
(4) what the police did during delay Obtained confession

These factors, separately or together, do not, in my view, suggest promptness.[2] *817 They suggest the opposite: unreasonable delay. The majority is correct when they acknowledge the parental notification statute requires strict compliance. The actions in this case do not constitute strict compliance. I would hold the notification of JBJ's parents was not prompt and therefore not in compliance with the statute.

THE TOTALITY OF THE CIRCUMSTANCES CONSTRUCT
The majority utilizes the totality of the circumstances construct in determining whether a violation of the notification statute occurred. No other Texas court has utilized this construct in this manner. If voluntariness of the confession were the issue, then the totality of the circumstances would be considered in making that determination. In re R.J.H., 79 S.W.3d 1 (Tex.2002). This appeal does not challenge the voluntariness of the confession; therefore the totality of the circumstances construct is applied inappropriately.

THE CONCURRENCE
Even with a determination that the notification was not prompt, the judgment must still be affirmed. The Court of Criminal Appeals has concluded that before a juvenile's confession can be excluded, there must be a casual connection between the Family Code violation and the making of the statement. Pham v. State, 72 S.W.3d 346 (Tex.Crim.App.2002); Gonzales v. State, 67 S.W.3d 910, 912 (Tex. Crim.App.2002). There is no evidence of such a casual connection. Therefore, the trial judge was correct in denying the motion to suppress.
NOTES
[1] Section 51.09 of the Texas Family Code sets forth the requirements for obtaining a waiver of rights by a juvenile, and the section requires waiver be made by the child and an attorney for the child. See TEX. FAM.CODE ANN. § 51.09 (Vernon Supp.2002). Section 51.095 provides for the admissibility of statements "[n]otwithstanding Section 51.09," and does not require the presence or joinder of a parent or attorney. See TEX. FAM.CODE ANN. § 51.095 (Vernon Supp.2002). The U.S. Supreme Court has held that under proper circumstances a juvenile may waive constitutional rights without an attorney. See Fare v. Michael C., 442 U.S. 707, 727-28, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). However, the lack of the presence of a parent has been considered an important factor in determining whether a child's confession was made intelligently, knowingly, and voluntarily in at least one Texas case. See E.A.W. v. State, 547 S.W.2d 63, 64-65 (Tex.Civ.App.-Waco 1977, no writ). And we note the Texas Family Code entitles a juvenile to have a parent present in the juvenile processing office. See TEX. FAM. CODE § 52.025(c) (Vernon Supp.2002). However, we do not address these issues in this case as they are not raised or briefed by the parties.
[2] But as a general, common sense matter, what is promptness? If we tell our teenagers to promptly call home when they change locations while visiting friends, would we accept them being at a location for an hour before calling us. Absolutely NOT. Would we accept the excuse that they called our office six times before calling home? Absolutely NOT.