# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-01-00342-CR
===============

**Jeremy Keith Coffey, Appellant**

**v.**

**The State of Texas, Appellee**

========================================================================
**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 7124, HONORABLE JOE CARROLL, JUDGE PRESIDING**
========================================================================

The juvenile court waived jurisdiction over the sixteen-year-old appellant Jeremy Keith Coffey and certified him for trial as an adult. Appellant was indicted and convicted of the offense of murder. *See* Tex. Pen. Code Ann. § 19.02(b)(1) (West 1994). The jury assessed appellant's punishment at life imprisonment. On appeal, appellant asserts that his written confession was erroneously admitted in evidence. We will affirm the judgment.

### Appellant's Confession

On Saturday night the 22nd of July Bryan Horton spent the night with me at my house in Copperas Cove. Around 11:30 PM my mother got me and Bryan into Southern Nights, which is a night club in Copperas Cove. We carried a small amount of rum in the club with us and mixed a few drinks while we were there. We left when the club closed, I think that was around 2:00 AM or 2:30 AM. We went back to my apartment and got ready to go over to a girl named Jamie's house.

Earlier in the day we talked about getting a gun from a girl named Jamie Woods. Bryan knew that Jamie's father had a gun. I had never met her before. A couple of days prior to going to Jamie's I borrowed a knife from a friend of mine named Jeffrey Parker. I told Jeffrey that we were going to use the knife to scare somebody. Bryan and I had decided to use the knife to scare Jamie into giving us the gun.

When we left my apartment after getting back from Southern Nights we drove out towards Jamie's house. We were in my mother's silver Ford Taurus. We went out U.S. 190 towards Kempner and turned onto FM 2657. We went down to Boys Ranch Road and turned left. We passed Jamie's house and Bryan pointed it out. We turned left on the next street after her house and turned the car back around facing the way we had come down Boys Ranch Road.

We got out of the car and walked down to Jamie's house which was a trailer with stairs and a rail on the front. It still had Christmas lights on the front. Her blue truck was parked right in front of the house. We knocked on the door and she answered. Bryan asked her if we could use the phone because we had run out of gas, which was a story we had agreed to use to get in the house. She told us to hold on while she went and changed pants. She came back, opened the door, and invited us in. We went in and she offered Bryan the phone but he did not take it. He told her we would just hang out for a little bit.

She went over and sat down by her computer and offered us something to drink. She brought me a Mountain Dew and a cup. We talked for awhile and she called her boyfriend. She talked to him for a little bit. She got off of the phone with him and put her dog outside because it was barking. Bryan asked her if her father still had his gun and she said yes. She then asked Bryan if he wanted to see it and he said yes. She went into her father's room and got the gun, it was a 22 pistol. She started playing with the clip and he asked her if she could loan it to him. She said "hell no" and that it was her dad's and she was not even supposed to have it out. She then went and put it back up.

Jamie started talking about a guy she was going out with and how good looking the guy was. Bryan wanted to see what the guy looked like because he is bi-sexual. She went out to her truck and got a picture of the guy and came back inside. She sat down on the love seat right inside the front door and Bryan sat across from her on a couch. I stood beside the love seat with my back facing the front door. We talked about this guy she had the picture of. I had the knife stuck in the back of my pants in my waistline. I took the knife out and held it out in front of her, I moved it so the light shined off the blade. I then just stabbed her.

2

Jamie looked up at me and said "please don't kill me." She told me that I could take anything, she lifted up her keys and tried to hand them to me. I shook my head and I think she dropped them. I stabbed her again and she started breathing heavy and her eyes rolled. I don't remember how many times I stabbed her but it was three or more times. Several times I missed, one time I hit her face right on her cheek. I do remember stabbing her several times in her side. Bryan took a blanket and threw it on her body. I do not know if she was alive or not, I did not look. I went in the bathroom to get a wash cloth. I wiped up all of the places that I had touched through the house. Bryan and I went into her dad's bedroom looking for the gun. Bryan found the gun on the dresser on a shelf. We could not find the clip so Bryan went and looked in Jamie's pocket. He then came back in the bedroom and found the clip on the very top of the dresser. When I finished wiping everything up I told Bryan that I was going to go get the car.

I ran out of the house to get the car. I pulled up in front of Jamie's house on the right side of the road facing FM 2657. I started to get out of the car and I heard a pop. I then saw Bryan come running out of the house with the gun in his hand. He got in the car and we took off back to Copperas Cove. We went back to my apartment and I washed my hands because there was blood on them and my elbow. Bryan went and put the gun under the mattress. I put the knife in a Marlboro bag in my bedroom closet. I told him that I needed to get rid of some of the things I had. I got a trash bag and put the shoes I was wearing in along with the wash cloth used to wipe everything down and a bath mat with blood drops on it. I also put in some trash to make it look like regular trash. We drove to Five Hills Apartments, that was around 4:30 AM or 5:00 AM. I used to live at Five Hills and knew that nobody would be awake at that time. We put the bag in a dumpster there. We then drove back to my apartment and eventually went to sleep.

I left a blue rag in my mom's car and found it Tuesday. The gun had been wrapped in that rag and Bryan took it when he ran out of the house. I left it at the White Lighting Car Wash in Copperas Cove, beside Dairy Queen. Bryan left from my house Sunday afternoon. When he left he took the gun with him. I talked about hiding it in the air conditioning vent of his trailer house. The gun that was found in my mother's car when we got stopped today is the same one that came out of Jamie's house. We told a guy named Adam Becker about what we had done. We took the gun over to his house on Monday night and showed it to him. We went in his back yard and shot a shack in his back yard. We shot the nine shells that were remaining in the clip.

3

## Suppression Hearing Evidence

The trial court conducted a pretrial hearing of appellant's motion to suppress his confession. We will summarize the hearing evidence. Early in their investigation of the murder of Jamie Woods, Lampasas County officers received information that they believed furnished probable cause for taking appellant and Bryan Horton into custody. The officers had information that appellant lived in Copperas Cove with his mother and that Bryan Horton lived in Harker Heights with his aunt.

On July 25, late in the evening, Sergeant Investigator David Whitis and Texas Ranger Sergeant Fred Cummings drove to Harker Heights to find Horton. Lampasas County Sheriff Gordon Morris and Investigator Doug Kahlstrom drove to Copperas Cove to look for appellant. With the help of Sergeant George Ronnie, a Copperas Cove police officer, Sheriff Morris and Kahlstrom located the apartment where appellant lived with his mother. The officers had a specific description of a Ford Taurus car belonging to appellant's mother that the officers believed appellant was driving. When the officers did not see the Taurus parked near the apartment, they backed-off and maintained a surveillance of the area. At about 11:30 p.m., the Taurus with several passengers stopped momentarily in front of appellant's mother's apartment. The Taurus was then driven toward the parking lot exit. Sheriff Morris and Kahlstrom stopped the Taurus. Appellant was driving and one of his three passengers was Bryan Horton. Appellant and Horton were taken into custody and Kahlstrom advised them of their *Miranda* rights.[1] By cell phone, Morris notified Whitis and Cummings that appellant and Horton were in custody. Whitis and Cummings drove to Copperas

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966); *see also* Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979).

Cove and joined Morris and Kahlstrom. Horton told the officers that there was a handgun in the Taurus.

The officers awakened appellant's mother and told her they had taken her son into custody believing that he had committed the offense of murder. Appellant's mother gave written consent for the officers to search her car. Appellant's mother was "concerned" and "defensive" and asked many questions. Both Sheriff Morris and Ranger Cummings attempted to answer appellant's mother's questions. They told her that they were going to take appellant to Lampasas and that she could come to Lampasas. She did not indicate that she was coming to Lampasas or that she was going to obtain counsel for appellant. It was approximately one hour after appellant was taken into custody before Sheriff Morris and Kahlstrom took appellant to Lampasas.

A portion of the sheriff's office—two investigators' offices and a conference room—had been designated and certified by the Lampasas County Juvenile Board as a juvenile processing office suitable "for detention, questioning, interrogation and fingerprinting of juveniles upon arrest, not to exceed six (6) hours as provided by section 52.025 of the Texas Family Code." *See* Tex. Fam. Code Ann. § 52.025 (West Supp. 2002). Appellant was taken directly from the place where he was taken into custody to the designated juvenile processing office within the sheriff's office in Lampasas.

Linda Rich, the Lampasas County Chief Juvenile Probation Officer, came to the juvenile processing office "between 12:30 and 1:00 a.m." She took custody of appellant and followed the "intake" procedure and obtained "basic information" to authorize appellant's detention. After the "intake" of appellant, Rich called appellant's mother at 2:18 a.m. and told her appellant was being

5

charged with murder and that she would call her in the morning and tell her exactly what time the judge set for the detention hearing. At 2:40 a.m., Rich released appellant to Whitis and Cummings so that they could interrogate appellant.

After Rich returned appellant to the custody of Whitis and Cummings, they fully advised appellant of his *Miranda* rights. Appellant did not ask for counsel and he did not ask to see his mother. The officers interviewed appellant until 3:25 a.m. The record does not reveal what appellant told the officers during this interview. No oral confession was offered in evidence.

At 4:00 a.m., Justice of the Peace Francis Porter came to the juvenile processing offices. Acting as a magistrate, out of the presence of any law enforcement officers, Judge Porter administered to appellant the juvenile warnings required by the Texas Family Code. *See* Tex. Fam. Code Ann. § 51.095 (West Supp. 2002). Judge Porter's written record of the warnings follow:

On the 26th day of July 2000, at 4:00 o'clock A.M., before me, the undersigned Official acting as and in the capacity of Magistrate, personally appeared Jeremy Keith Coffey, a child, at Lampasas County Sheriffs Office (location), in Lampasas County, Texas. The following rights and warnings were read and explained to the child:

You are charged by law enforcement with the offense of Murder which is a first degree felony (specify degree of misdemeanor or felony, or other offense).

1. You may remain silent and not make any statement at all and any statement that you make may be used in evidence against you;

2. You have the right to have an attorney present to advise you either prior to any questioning or during any questioning;

3. If you are unable to employ an attorney, you have the right to have an attorney appointed to counsel with you prior to or during any interview with peace officers or attorneys representing the state;

6

4. You have the right to terminate the interview at any time;

I have listened carefully to and understood each of the above rights as they were read and explained to me. I have asked the magistrate any questions that I may have regarding these rights. At this time, I fully understand all my rights as they have been explained to me, and I voluntarily wish to waive them.


| Yes | /s/ Jeremy Coffey |
|---|---|
| Answer **YES** or **NO** | Signature of Juvenile |

| July 26, 2000 | |
|---|---|
| Date Signed | Time Signed |

| July 26, 2000  4:03 AM | |
|---|---|
| Date & Time Signed | Parents Signature |


On this day before me, personally appeared Jeremy Keith Coffey, age 16, a juvenile. I certify that the foregoing statutory rights were read and explained to said juvenile, at Lampasas County Sheriffs Office (location, in Lampasas County, Texas).

/s/  Frances Porter

Magistrate's Signature

FRANCES PORTER

Magistrate's Name (Printed or Typed)
The 27th Judicial District Court of
Lampasas County, Texas


After appellant received the juvenile warnings from Judge Porter, she released appellant to Whitis and Cummings to make a written statement. When Whitis finished typing appellant's confession, Whitis read the confession to appellant and handed the confession to appellant. Appellant looked at the confession and did not ask to make any corrections. Appellant was then

7

returned to Judge Porter, who out of the presence of any officers, examined appellant as evidenced

by the certification bearing her signature that follows:

> I HEREBY CERTIFY AND VERIFY that I, Judge Francis Porter, Acting as and in the capacity of a Magistrate, did on the 26th day of July 2000, at 4:20 o'clock A.M., administer the juvenile warnings required by Section 51.095 of the Texas Family Code to:

> Name: Jeremy Keith Coffey, a juvenile.
> Age: 16.  Date of Birth: 042884.
> Address: 105 East Avenue B #3 Copperas Cove, TX

> who appeared before me in the city of Lampasas, Lampasas County, Texas.

> I FURTHER CERTIFY AND VERIFY that I have examined the said juvenile above as required by the Texas Family Code Section 51.095. During the examination, I observed and/or was advised by the said juvenile that he:

> 1. claims to be 16 years of age and reasonably appears to be of that age.

> 2. can read the English language, and has demonstrated to me that he can do so.

> 3. claims to be a citizen of the United States of America;

> 4. advised me that he has completed the 9th grade in school, and is now in the 10th grade in school;

> 5. was not coerced, threatened or promised anything by law enforcement officers, prosecutors or any other agent of the State of Texas;

> 6. does not appear to be under the influence of drugs, alcohol, intoxicating beverages or inhalants;

> 7. does not appear to be physically or emotionally abused by law enforcement officers, or anyone else;

> 8. does not appear to have any physical or mental condition that might impair his ability to understand the rights read to him.

8

9. appears to understand the meaning of the warning given herein and has no questions about the warning, except as may be noted as follows, if any:

10. understands that the offense charged is Murder, and that this offense is a first degree felony (specify degree of offense)

11. understands what the statement says, and agrees that the statement is his version of the facts surrounding the said offense, and that it is true;

12. made such statement knowingly and voluntarily and in his own free will without any improper inducements or prohibited conduct by any law enforcement officers, prosecutors or any other persons; and

13. indicates that he has not been deprived of food, drink or sleep.

The juvenile named herein was brought before me on this day by law enforcement officer, David S. Whitis employed by the following agency: Lampasas County Sheriff's Department.

* * * * *

Only after receiving the proper warning and being examined by the undersigned magistrate did the juvenile, Jeremy Keith Coffey, sign the attached statement. Based upon the foregoing determinations and observations, I hereby verify and certify the following:

I have examined the child independently of any law enforcement officer or prosecuting attorney.

* * * * *

I have determined that the child understands the nature and content of his statement.

I am fully convinced that the said juvenile has knowingly, intelligently and voluntarily waived the attached statutory rights as set out in the warning given pursuant to Section 51.095 of the Texas Family Code prior to and during the making of the statement which is attached hereto and made a part hereof for all purposes.

* * * * *

9

This certification is hereby made by the undersigned Magistrate on this the 26th day of July 2000, 5:50 o'clock A.M., in Lampasas County, Texas.

After Judge Porter examined appellant, appellant signed the confession in her presence at 5:50 a.m. Appellant was then taken to the Juvenile Detention Facility in Killeen.

Appellant testified that just before he was taken into custody he had been "huffing gas" and that he didn't understand what was happening except that he was being arrested. He also testified that, before he made his confession, the Ranger told him that it would look better in court if he had made a statement and that it would look bad if he did not make a statement.

**Section 51.095 Violation**

In his second point of error, appellant insists that the "trial court erred in admitting the appellant's statement in violation of section 51.095 of the Texas Family Code." *See* Tex. Fam. Code Ann. § 51.095 (West Supp. 2002). Under this point of error, appellant's arguments are actually focused on the voluntariness of his confession.

First, appellant argues that the statement he made before he was advised by a magistrate may have been coerced and was therefore made involuntarily. Appellant's bare assertion that his confession *may* have been coerced before he was advised by a magistrate has no factual support in the record. The record shows that the safeguards of section 51.095 were followed.

Second, appellant contends that immediately before he was taken into custody, he had been "huffing gas." Therefore, when he made his confession, he did not "understand the situation" rendering his confession involuntary. The only evidence in the record that appellant may have been "huffing gas" came from appellant's own testimony.

10

Sheriff Morris, Ranger Cummings, Investigator Whitis, Juvenile Probation Officer Rich, and Judge Porter all testified that they did not smell gasoline when they were in appellant's presence. Each of these witnesses testified that they did not believe appellant's capacity or ability to make his statement had been impaired in any way, specifically not by "huffing gas" or by the use of alcohol.

Third, appellant claims that before he made his confession he was told that if he made a statement it would "help him." Appellant contends that this promise rendered his statement involuntary. This claim does not relate to a specific violation of section 51.095. The claim rests entirely on appellant's testimony. In the suppression hearing, appellant testified for the limited purpose of determining whether his confession was admissible. He testified:

> A. After they gave me my rights, the Ranger, he explained to me that if I gave him the testimony or a statement, that it would look good in court and that I could live a better life. That it would look better in court. And if I didn't, that it would look bad in court.
>
> Q. What do you think that meant? What did that mean to you?
>
> A. I felt that if I gave him a statement, you know, what they said, then, you know, I would look good in court, that I would be looked upon with sympathy.

Appellant's credibility and the truthfulness of his testimony were matters to be determined by the trial court. Therefore, we must accord almost total deference to the trial court's ruling. *See Roquemore v. State*, 60 S.W.3d 862, 866 (Tex. Crim. App. 2001); *State v. Ross*, 32 S.W.3d 853, 856-57 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court is the sole judge of the credibility of witnesses in a pretrial hearing, and absent

11

a showing of abuse of discretion, a trial court's finding on the voluntariness of a confession will not be disturbed. *Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994).

Moreover, for a promise to render a confession involuntary, it must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that it would cause an accused to speak untruthfully. *See Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997); *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). We do not construe the statements appellant attributes to Ranger Cummings, even if true, to be a positive promise of such an influential nature that it would cause appellant to speak untruthfully.

The trial court did not abuse its discretion in denying appellant's motion to suppress his confession. No violations of section 51.095 have been shown. Appellant's second point of error is overruled.

### Section 52.02 Delay

In his first point of error, appellant contends that the "trial court erred in admitting the appellant's statement in violation of section 52.02 of the Texas Family Code."

The Juvenile Justice Code, in the part relevant to this point of error, allows a child taken into custody to be taken to a juvenile processing office designated by a juvenile board where the child's statement may be taken, if the child is taken to the juvenile processing office without unnecessary delay and before the child is taken to any other place. *See* Tex. Fam. Code Ann. §§ 51.095, 52.02, 52.025 (West Supp. 2002); *Le v. State*, 993 S.W.2d 650, 652-53 (Tex. Crim. App. 1999). More specifically, appellant complains that his confession was inadmissible because after he was taken into custody it was approximately one hour before he was taken to a designated juvenile

12

processing office. Appellant claims this delay at the place where he was taken into custody was unnecessary delay. Unnecessary delay "can only be determined on a case by case basis." *Contreras v. State*, No. 1682-99, slip op. at 7, 2001 Tex. Crim. App. Lexis 58 at *10 (Tex. Crim. App. June 27, 2001). Appellate review of this issue has been held to be *de novo*. *See id.; Guzman*, 955 S.W.2d at 88-90.

When appellant and Horton were taken into custody, there were two other young men in the car. The officers had to determine whether or not to release the other passengers. The officers then took time to advise appellant and Horton of their *Miranda* rights. Appellant's mother and a man living with her were in the apartment nearby. The officers were obligated by statute to inform her that appellant was being taken into custody. It was several minutes before she and the man appeared at the door. Sheriff Morris explained to appellant's mother that her son was being taken into custody because they believed he had committed murder. He informed her that appellant was being taken to Lampasas and that she had the right to come to Lampasas. He also told her that appellant would be taken to the juvenile detention facility in Killeen when the investigation was completed. The man with appellant's mother "was getting very verbal." After the officers determined that this man was not appellant's father or stepfather, the man was ordered to go back into the apartment. Appellant's mother became "very emotional" and went back and forth into the apartment. She asked many questions that the officers attempted to answer. Horton had told the officers that there was a handgun in appellant's mother's car. The officers took time to obtain her written consent to search the car. There is no evidence that either appellant or Horton were interrogated or made any statements before appellant was released to the chief juvenile probation officer in Lampasas. A

13

review of the record of the officers' conduct at the time appellant was taken into custody, and subsequently, shows they were conscientiously complying with the dictates of the juvenile code.

Based on the record, we concur with the trial court's implied finding and we independently find *de novo* that appellant was taken to the designated juvenile processing office in Lampasas without unnecessary delay. *See Contreras*, 2001 Tex. Crim. App. Lexis 58 at *10. Appellant's first point of error is overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Chief Justice Aboussie, Justices Yeakel and Dally

Affirmed

Filed: March 21, 2002

Do Not Publish

---

[*]  Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).