John Tuy PHAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–99–00631–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 26, 2003.

George Allen Goodling, Cogdell & Goodling, George J. Parnham, Houston, TX, for Appellant.

Carol M. Cameron, Assistant District Attorney, John B. Holmes, District Attorney, Houston, TX, Matthew William Paul, State Prosecuting Attorney, Austin, TX, for Appellee.

The panel on remand consisted of Justices HEDGES, MIRABAL,* and DUGGAN.**

## EN BANC OPINION ON REMAND FROM THE COURT OF CRIMINAL APPEALS

TIM TAFT, Justice.

A jury found appellant, John Tuy Pham, guilty of murder and assessed punishment at life in prison. This Court reversed the conviction because the trial court had erred in admitting appellant's confession. *Pham v. State*, 36 S.W.3d 199 (Tex.App.-Houston [1st Dist.] 2000) (*Pham I*). On petition for discretionary review, the Court of Criminal Appeals vacated our judgment and remanded the cause for reconsideration in light of *Gonzales v. State*, 67 S.W.3d 910 (Tex.Crim.App.2002). *Pham v. State*, 72 S.W.3d 346 (Tex.Crim.App. 2002) (*Pham II*). We apply *Gonzales* by considering whether there was a causal connection between (1) the failure to notify

appellant's parents of his custody and whereabouts and (2) the acquisition of appellant's confession. We also address (1) whether appellant preserved his complaint that the trial court should have suppressed his oral statement because he was not taken to a juvenile processing office without unnecessary delay; (2) whether the trial court reversibly erred in refusing appellant's requested jury instructions regarding the admissibility of appellant's illegally taken oral confession; and (3) whether the trial court abused its discretion in excluding expert testimony regarding the impact or desirability of probation versus incarceration. We affirm.

### Facts

Appellant was a 16–year–old high school junior when he became a suspect in a drive-by shooting that had resulted in the death of the complainant, Dung Van Ha. Houston Police Department officers went to appellant's school and took him into custody about 2:35 p.m. The officers were told by a school security guard that the principal would contact appellant's family and that the guard himself would contact appellant's brother. The officers took appellant to be warned by a magistrate about 3:35 p.m. Appellant was then taken to the downtown police station and questioned by an investigator. About 4:38 p.m., appellant admitted having fired a .45–caliber weapon at the car that the complainant was driving. The officers who had taken appellant into custody then took appellant to a juvenile facility be processed, fingerprinted, and photographed.

The first notification of appellant's family was made by an officer at the juvenile processing facility. The officer spoke to

* The Honorable Margaret Garner Mirabal, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

** The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

appellant's sister around 8:15 p.m. Someone from the Juvenile Probation Department contacted appellant's father about 9:50 p.m. It was not until the following day that appellant's parents went to see appellant and found out why he had been taken into custody.

### Requirement of Causal Connection Between Failure to Notify Parents and Child's Ensuing Confession

In his first and second points of error, appellant contends that his confession should have been suppressed pursuant to article 38.23 of the Code of Criminal Procedure (the Texas statutory exclusionary rule) because the police did not comply with section 52.02(b) of the Family Code. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2004); TEX. FAM.CODE ANN. § 52.02(b) (Vernon Supp.2004). Section 52.02(b) requires that a person taking a child into custody promptly give notice of the person's action, and a statement of the reason for taking the child into custody, to the child's parent, guardian, or custodian and to the office or official designated by the juvenile board. TEX. FAM.CODE ANN. § 52.02(b). Appellant's complaint focuses on the failure to notify his parents promptly.

 In *Pham I*, we held that the officers failed to notify appellant's parents promptly. *Id.*, 36 S.W.3d at 203–04. A juvenile's written statement obtained after a violation of section 52.02(b) of the Family Code is not automatically inadmissible, however. *See Gonzales*, 67 S.W.3d at 912–13. If evidence obtained in violation of the Family Code is to be excluded, article 38.23 of the Code of Criminal Procedure is the proper mechanism for exclusion. *Id.* Article 38.23(a) provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas ... shall be admitted in evidence...." TEX.CODE CRIM. PROC. ANN. art. 38.23(a). Evidence is not obtained in violation of a provision of law if there is no causal connection between the illegal conduct and the acquisition of evidence. *Gonzales*, 67 S.W.3d at 912. Therefore, in light of article 38.23(a), before a juvenile's written statement can be excluded, there must be a causal connection between the violation of section 52.02(b) and the making of the statement. *See id.*

In our original opinion, we conducted a taint-attenuation analysis, tracking *Comer v. State*, 776 S.W.2d 191 (Tex.Crim.App. 1989). *See Pham I*, 36 S.W.3d at 204–05. This was apparently an insufficient analysis to avoid a remand for reconsideration in light of *Gonzales*. Therefore, at the outset, we determine whether causal connection and attenuation of the taint constitute separate analyses.

### A. Whether Causal Connection and Attenuation of the Taint Involve Separate Analyses

The case most clearly demonstrating separate analyses for causal connection and attenuation of the taint, and the order in which they are to be undertaken, is *Roquemore v. State*, 60 S.W.3d 862 (Tex. Crim.App.2001). In *Roquemore*, the Court of Criminal Appeals first found a causal connection between the recovery of the stolen property and the illegality of the police conduct. *Id.* at 871. The Court found it unnecessary, however, to proceed to an attenuation-of-the-taint analysis because the State did not raise the argument. *Id.* at n. 14.

 Based on *Roquemore*, and based on the fact that our attenuation-of-the-taint analysis in *Pham I* was found inadequate to satisfy a *Gonzales* causal-connection analysis, we conclude that there are separate analyses for causal connection and

attenuation of the taint. Based on *Roquemore,* we also conclude that the causal-connection analysis precedes the attenuation-of-the-taint analysis. We next determine who has the burden in a causal-connection analysis.

## B. Who Has the Burden

### 1. Causal connection

No direct authority establishes who has the burden of proving a causal connection between a Family Code violation and a juvenile defendant's statement. The Court of Criminal Appeals has directed us to conduct a causal-connection analysis, but has not set out whether the State or the defendant has the burden of proof. Not surprisingly, both parties have argued that the other party should have the burden.

Appellant argues that the burden of disproving a causal connection lies with the State. Appellant relies on (1) an analogy to how the burden shifts to the State to show compliance with a statute once the accused has raised some evidence of a violation; (2) an analogy to the State's ultimate burden of proving that the voluntariness of a confession; and (3) a commentator's observation that *Gonzales* recognized with approval a statement from *Comer* that appeared to conclude that the evidence failed to show the lack of a causal connection between the statutory violation and the making of the statement. We agree with appellant that, once a defendant raises some evidence of a Family Code violation, the State then has the burden of proving compliance with the statute. *Roquemore,* 60 S.W.3d at 869. This does not resolve the issue of who has the burden of proving a causal connection between the violation of the statute and the ensuing statement, however. We also agree with appellant that the State has the ultimate burden of proving that a statement is ad-

missible under an attenuation-of-the-taint analysis, just as the State has the ultimate burden of proving a confession is voluntary, but the issue before us is who has the initial burden regarding a causal connection, not who has the ultimate burden of persuasion. Finally, the practice commentary cited by appellant does not address the issue of who has the initial burden regarding causal connection.

The State argues that placing the burden on appellant to demonstrate a causal connection is proper because (1) inadmissibility is not established by violation of a statute alone, but only upon a showing of a causal connection between the violation and the ensuing confession and (2) it is well settled that the failure to take an arrestee before a magistrate promptly will not invalidate a confession unless there is proof of a causal connection between the delay and the confession. The State cites *Cantu v. State* for the latter proposition. *See id.,* 842 S.W.2d 667 (Tex.Crim.App. 1992). In *Cantu,* the Court of Criminal Appeals looked to the appellant to demonstrate a connection between the violation of the statute and the confession. *Id.* at 680.

We agree with the State that it is appropriate to look to analogous circumstances involving a violation of a statute after which evidence, primarily a confession, is obtained. There are many cases holding that, absent a showing of a causal connection between the failure to take an accused before a magistrate promptly, as required by statute, and the accused's ensuing confession, the validity of the confession is not affected. *See, e.g., Boyd v. State,* 811 S.W.2d 105, 124 (Tex.Crim.App.1991). The appellant is generally expected to make the showing. *Id.* at 125 ("Appellant fails to demonstrate any causal connection between his statement and the failure of the authorities to take him before a magis-

trate."); *Schultz v. State,* 510 S.W.2d 940, 943 (Tex.Crim.App.1974) ("[A]ppellant must show a causal connection between [the failure to take appellant before a magistrate] and his confession."); *Shadrick v. State,* 491 S.W.2d 681, 684 (Tex.Crim.App. 1973) (same). This Court has also held that it is a defendant's burden to show a causal connection between the failure to take him before a magistrate and a subsequent confession in order to obtain suppression of the confession. *See Bonner v. State,* 804 S.W.2d 580, 582 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd); *Straughter v. State,* 801 S.W.2d 607, 610 (Tex.App.-Houston [1st Dist.] 1990, no pet.). In another analogous situation, this Court has placed the burden on the defendant to show a causal connection between an improper warning and a decision to submit to a breath test. *See Schafer v. State,* 95 S.W.3d 452, 455 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

■ We see no reason to apply a different burden regarding the causal-connection analysis between violations of the Family Code requirement to notify a juvenile's parents and a subsequent statement. This is particularly appropriate where the Court of Criminal Appeals has held that evidence is not obtained in violation of the law if there is no causal connection between the illegal conduct and the acquisition of the evidence. *See Gonzales,* 67 S.W.3d at 912.

Moreover, as a practical matter, it is reasonable to place the burden on the defendant to produce evidence to which only the defendant has access. The defendant alone has access to his own thought processes, and the defendant has much better access to his own parents, who are likely to be much more cooperative with their accused child and his attorney than with the State. *See, e.g., State v. Simpson,* 105 S.W.3d 238, 242–43 (Tex.App.-Tyler 2003,

no pet. h.) (relying on testimony of juvenile defendant's mother that she and her husband waited to take action concerning the defendant, having confidence that police would contact them if the child had been taken into custody). On the other hand, it is more reasonable to place the burden on the State to show attenuation of the taint because the State has control of the detention and interrogation process so that it may engage in conduct that dissipates and neutralizes the taint from any unlawful police conduct.

Accordingly, we conclude that the burden is on the juvenile defendant to show some evidence of a causal connection between the failure to notify the juvenile detainee's parents and an ensuing confession.

## 2. Attenuation of the taint

■ As pointed out above, the *Roquemore* court looked to the State to establish attenuation of the taint. *Id.,* 60 S.W.3d at 871 n. 14. The parties do not even argue about this proposition. We conclude that it is the State's burden to demonstrate attenuation of the taint, once a causal connection is shown between police illegality and the recovery of evidence.

## C. Summary

For the foregoing reasons, we hold that, when a juvenile defendant seeks to suppress a confession given after the failure to notify the juvenile's parents promptly of the juvenile's whereabouts and the reason for taking the juvenile into custody, the burden is initially upon the defendant to raise the issue by producing evidence of a violation of the statutory requirement. *Roquemore,* 60 S.W.3d at 869. The burden then shifts to the State to prove compliance with the statute. *Id.* Because a violation of the statute is not alone sufficient to require exclusion of the confession,

the burden then reverts to the defendant to produce evidence of a causal connection between the statutory violation and the ensuing confession. *Cf. Cantu,* 842 S.W.2d at 680. Once the defendant meets this burden, the State must then shoulder the burden of either disproving a causal connection or demonstrating attenuation of the taint. *See* GEORGE E. DIX & ROBERT O. DAWSON, 41 TEXAS CRIMINAL PRACTICE & PROCEDURE § 13.339, at 29 (2d ed. Supp. 2003) ("Most likely, however, a defendant challenging evidence must show a causal connection between the section 52.02 illegality and the obtaining of the evidence. If this is shown, the State may raise and undertake to establish that the taint of the illegality was attenuated by the time the challenged evidence was obtained."). Because we addressed the violation of the statute in our original opinion, holding that the statute requiring parental notification was violated, it is unnecessary to repeat that analysis in this opinion. We thus proceed directly to a causal-connection analysis.

### D. Causal–Connection Analysis

■ Despite arguing that it was the State's burden to negate a causal connection, appellant maintains that the causal link was clear and obvious in this case. First, appellant anticipates that the State will argue that the short length of time that appellant was detained before giving the confession negates any causal link. Appellant urges us to reject what he characterizes as a facially-appealing argument because it would reward police officers for quickly obtaining confessions in disregard of statutory requirements. Appellant argues that a causal connection was shown by the limitless, potentially different outcomes that might have resulted if appellant's parents had been promptly notified. Appellant argues that (1) his parents might have arranged counsel for him; (2)

they might have intervened with the investigators; (3) they might have arranged for appellant to be interviewed in a less coercive setting; (4) they might have advised appellant not to make any statement; or (5) any of a multitude of possibilities might have transpired. The State argues that there is no evidence of any causal connection, citing a recent case from the Fourteenth Court of Appeals. *See Vann v. State,* 93 S.W.3d 182, 185–86 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (finding no causal link between two-and-one-half hour delay in notifying defendant's cousin and making of defendant's written statement, when cousin was present at detention and arrest and at station during time that defendant confessed).

Regarding what effect the failure to notify appellant's parents promptly had upon his decision to confess, the record does not yield any evidence whatsoever. There is no evidence as to what appellant's parents would have done if they had been notified more promptly. There is no evidence that appellant was aware that his parents were supposed to be notified or that he was aware that they were not more promptly notified. There is no evidence that appellant asked to speak with his parents. To the contrary, there is evidence he did not ask for his parents "or anything like that." It is noteworthy that, upon being notified at 9:50 p.m., appellant's parents did not immediately attempt to contact appellant or an attorney. Instead, they waited until the following day to visit appellant. There is also evidence that appellant did not ask to speak to an attorney when given his rights, including his right to consult with counsel.

Because appellant had the burden of producing evidence of a causal connection, and because appellant produced no evidence, but only speculation, of what might have happened, we conclude that appellant

has not met his burden. It is, thus, unnecessary to conduct an attenuation-of-the-taint analysis.

We overrule appellant's first and second points of error.

### Failure to Take Detained Juvenile Without Unnecessary Delay to an Office or Official Designated by the Juvenile Court

In his third and fourth points of error, appellant contends that the trial court reversibly erred in denying appellant's motion to suppress his oral statement because it was taken in violation of section 52.02(a) of the Texas Family Code. *See* TEX. FAM.CODE ANN. § 52.02(a) (Vernon Supp.2004). Appellant argues that he was not taken to a juvenile processing office as designated by section 52.025(a) of the Texas Family Code and that he was not taken without unnecessary delay to an office or official properly designated by the juvenile court, as required by section 52.02(a)(2) of the Texas Family Code. *See id.* §§ 52.02(a)(2), 52.025(a) (Vernon 2002 & Supp.2004). Specifically, appellant argues that, even if the entire police station at 1200 Travis is a designated facility, appellant was not taken to an office inside designated exclusively for processing juveniles.

The Texas Family Code requires that, without unnecessary delay, a detained juvenile be released to his parents (etc.), brought before the office or official designated by the juvenile court, brought to a juvenile detention facility, or brought to a medical facility under certain conditions, but the Code provides an exception to allow a detained juvenile first to be taken to a juvenile processing office. *Id.* § 52.02(a). A juvenile processing office is defined in section 52.025 of the Texas Family Code as an office or room designated by the juvenile board for the temporary detention of a juvenile in order to return the child to his parent or custodian (etc.), to complete required paper work, to photograph and to fingerprint, to issue warnings, or to receive a statement by the juvenile. *Id.* § 52.025(a), (b).

Appellant acknowledges that there was conflicting testimony supporting the trial court's conclusion of law that appellant's statement was taken in a designated juvenile processing office. Appellant claims that this case is controlled by *Baptist Vie Le v. State*, in which the juvenile defendant was taken to the same place that appellant was taken and that place was held not to be a designated juvenile processing office. *Id.*, 993 S.W.2d 650, 654–55 (Tex.Crim. App.1999). In *Baptist Vie Le*, however, there was nothing in the record to indicate that the homicide division of the Houston Police Department was a designated juvenile processing office. *Id.* at 654.

Nevertheless, appellant argues that, even if the homicide division was a designated juvenile processing office, appellant was not taken to a particular room designated only for processing juveniles. Appellant relies on *Anthony v. State* for the proposition that, even though a police station is designated a facility for processing juveniles, the police must use an area designated exclusively for juveniles in order to protect the juvenile from the stigma of criminality or exposure to adult offenders. *Id.*, 954 S.W.2d 132, 135–36 (Tex.App.-San Antonio 1997, no pet.), *overruled on other grounds by Gonzales*, 67 S.W.3d at 912–13, 912 n. 6 (holding that violation of Family Code does not automatically lead to exclusion of evidence). The State argues that appellant did not present this specific complaint to the trial court so as to preserve error on appeal. Appellant filed a written motion to suppress evidence. The motion specified both article 38.23 of the Texas Code of Criminal Procedure and section

52.02(b) of the Texas Family Code, but it did not mention section 52.02(a) or section 52.025 of the Texas Family Code or complain about the failure to take appellant to a designated juvenile processing office. During arguments presented in support of his motion to suppress, after having presented evidence, appellant again did not mention sections 52.02(a) or 52.025 or, in any way, allude to the failure of the police to take appellant to a designated juvenile processing office, much less one that was used exclusively for processing juveniles. Accordingly, we overrule appellant's third and fourth points of error because we conclude that he failed to preserve them by objecting on those grounds below. *See* Tex.R.App. P. 33.1(a)(1)(A).

### Refusing Jury Instruction to Disregard Illegally Taken Confession

■ In his fifth point of error, appellant contends that the trial court reversibly erred in refusing his requested jury instruction regarding the admissibility of his illegally taken oral confession. Appellant appears to include both the rejection of his request for a jury instruction pursuant to article 38.23 of the Code of Criminal Procedure (Texas statutory exclusionary rule) and section 52.02(b) of the Texas Family Code (failure to notify parents promptly). Appellant argues that he was entitled to the instruction because the evidence, from both the State and the defense, showed that appellant's parents were not promptly notified.

■ The State points out, as did the trial court below, that there was no controverted evidence regarding the issue. It is well settled that a defendant is entitled to an evidence-excluding instruction to the jury only when the evidence raises a factual issue for the jury to resolve. *Bell v.*

*State,* 938 S.W.2d 35, 48 (Tex.Crim.App. 1996). Accordingly, we overrule appellant's fifth point of error.

### Exclusion of Expert Testimony Regarding Probation Suitability

■ In his sixth point of error, appellant contends that the trial court abused its discretion in excluding the testimony of Dr. Beth Pelz regarding appellant. Appellant argues that Dr. Pelz's testimony that appellant would not have benefitted from long-term incarceration was admissible pursuant to rule 702 of the Texas Rules of Evidence. *See* Tex.R. Evid. 702. Appellant claims that the testimony would have assisted the jury in determining appellant's sentence.

When this case was tried, and even when the parties filed their briefs, this Court had not yet decided *Peters v. State,* 31 S.W.3d 704 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). In *Peters,* we held that suitability for probation can be relevant to the jury's recommendation of punishment, provided that it is helpful to the jury in determining the appropriate sentence. *Id.* at 719. We pointed out to the bench and bar that important changes in article 37.07, section 3(a) of the Texas Code of Criminal Procedure[1] may make evidence admissible, despite much case law holding similar evidence per se inadmissible under the prior and more restrictive version of that statute. *Id.* at 722. We were speaking of the very case law upon which the State is relying here.

During the trial of this case, the State requested a hearing outside the presence of the jury to determine the admissibility of Dr. Pelz's testimony as an expert. Defense counsel first presented Dr. Pelz's credentials, which included expertise in the

---

1. Tex Code Crim. Proc Ann. art. 37.07, § 3(a)(1) (Vernon Supp.2004).

sociology of gangs. Initially, when the trial court asked if defense counsel was presenting Dr. Pelz to give her opinion as to whether appellant should get probation, defense counsel emphatically denied that she could give her opinion as to whether or not appellant should get probation. After defense counsel presented some testimony, and a couple of attempts at a proffer, the trial court expressed concern about what the exact nature of Dr. Pelz's testimony would be. Finally, defense counsel stated that Dr. Pelz would give three expert opinions: (1) that, based on everything Dr. Pelz knew, appellant would be a good candidate for probation; (2) that incarceration in the penitentiary for a person of appellant's maturity, coupled with his gang affiliation, would have a long-standing, detrimental impact on appellant, not serving society's purpose; and (3) that her observation of appellant showed him to be an immature individual who had been impacted by gang-type activities and individuals in the gang. After further examination and cross-examination, the prosecutor stated that he had no objection to Dr. Pelz's testifying about the impact of gangs on a person of appellant's maturity.

The trial court ruled that Dr. Pelz's qualifications and professional background were impressive, but in regard to Dr. Pelz's stating her opinions about appellant's suitability for probation and the adverse effect of incarceration, the trial court found that nothing had been presented to show that Dr. Pelz's findings or opinions were accepted as valid in the scientific community, that they were grounded on any particularly reliable scientific procedure, or that they were reliable. The trial court concluded that, given the speculative nature of Dr. Pelz's opinions, they were entirely too nebulous and speculative to assist the jury. The trial court ruled that Dr. Pelz's opinions as to the desirability of probation and the impact of incarceration would not be admissible, but that her opinions as to appellant's maturity and attraction to gangs would be admissible.

It is noteworthy that, although the State relied upon the old line of cases that we held in *Peters* were supplanted by statutory changes, the trial court here acknowledged appellant's argument at trial that the State's authority predated the new rules of evidence relative to expert opinions. The trial court did not base its ruling on the old line of cases, but, rather, upon an application of the rules of evidence concerning expert opinions, their reliability, and their ability to assist the jury to determine an issue in the case.

Here, the trial court performed its duty to determine whether the expert opinions in question would be helpful to the jury in determining the appropriate sentence in this case.[2] *See Peters*, 31 S.W.3d at 718 (quoting *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex.Crim.App.2000)). We hold that the trial court's obviously conscientious efforts in this case were well within the zone of reasonable disagreement so as not to constitute an abuse of discretion. *See Hankton v. State*, 23 S.W.3d 540, 546–47 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd).

Accordingly, we overrule appellant's sixth point of error.

## Conclusion

We affirm the judgment of the trial court.

En banc consideration was requested.

---

**2.** Although some of the trial court's remarks appeared to be more appropriate to a "hard science" or "soft science" reliability determination, the trial court's ultimate holding was that Dr. Pelz's opinions would not be helpful to the jury, anticipating our decision in *Peters*.

A majority of the Justices of the Court voted for en banc consideration.

The en banc Court consists of Chief Justice RADACK and Justices HEDGES, TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, MIRABAL, and DUGGAN.

Justice KEYES, joined by Justices MIRABAL and DUGGAN, dissenting.

Justice MIRABAL, joined by Justices KEYES and DUGGAN, dissenting.

MARGARET GARNER MIRABAL, Justice (Assigned), dissenting.

A jury found appellant, John Tuy Pham, guilty of murder and assessed punishment at confinement for life.[1] By opinion dated December 28, 2000, we reversed the judgment and remanded the cause. *Pham v. State*, 36 S.W.3d 199, 205 (Tex.App.-Houston [1st Dist.] 2000), *vacated and remanded*, 72 S.W.3d 346 (Tex.Crim.App.2002). The specific reason for the remand of this case to us is stated in the Court of Criminal Appeals's opinion as follows:

> Recently, in *Gonzales v. State*, 67 S.W.3d 910 (Tex.Crim.App.2002), we ... concluded that before a juvenile's written statement can be excluded, there must be a causal connection between the Family Code violation and the making of the statement. *Id.* at 912. The Court of Appeals in the instant case did not have the benefit of our opinion in *Gonzales.*

72 S.W.3d at 346. Accordingly, the court remanded this case to us for reconsideration in light of *Gonzales. Id.*

## DISCUSSION

*Gonzales* states that article 38.23(a) of the Texas Code of Criminal Procedure provides the proper mechanism for excluding evidence in violation of the Family Code. *Gonzales*, 67 S.W.3d at 913; *see* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2004). In our original *Pham* opinion, we acknowledged that whether or not the juvenile's written statement should be excluded was to be determined under article 38.23(a). *Pham*, 36 S.W.3d at 202 n. 2, 205.[2] In *Gonzales*, the court noted that "an exclusionary analysis under article 38.23(a) necessarily entails a causal connection analysis" and pointed to *Comer*[3] as an example of a similar case in which a causal connection analysis had been performed. *Gonzales*, 67 S.W.3d at 913 n. 8. In our original *Pham* opinion, we carefully followed the same causal connection analysis utilized by *Comer*. *Pham*, 36 S.W.3d at 204–05. I note that the Court of Criminal Appeals also pointed to the *Comer* analysis as an example of an appropriate article 38.23 causal connection analysis in *Roquemore v. State*, 60 S.W.3d 862, 870 (Tex.Crim.App.2001), and that the *Roquemore* opinion cited our original *Pham* opinion with approval. *Id.* at 869.

I further note that in our original opinion, we pointed to the evidence that appellant's parents were not notified about appellant's arrest until almost 10 p.m. and that it was not until the following morning that they found out why appellant had

---

1. Appellant was a juvenile who was certified to stand trial as an adult.

2. In our original *Pham* opinion, we stated, "Illegally obtained evidence is inadmissible against an accused," citing Code of Criminal Procedure article 38.23(a). *Pham*, 36 S.W.3d at 202. We further noted in footnote two of the opinion that "[t]he Texas Family Code expressly makes Chapter 38 of the Texas Code

of Criminal Procedure applicable to juvenile proceedings." *Id.* at 202 n. 2 (citing TEX. FAM.CODE ANN. § 51.17(c) (Vernon 2002)). We then concluded: "Accordingly, appellant's statement should have been suppressed under article 38.23 of the Texas Code of Criminal Procedure." *Id.* at 205.

3. *Comer v. State*, 776 S.W.2d 191 (Tex.Crim. App.1989).

been arrested. *Id.* at 201.[4] Appellant's parents should have been promptly notified shortly after their son's arrest at 2:35 in the afternoon so that they could have had an opportunity to join appellant at the juvenile processing office and could have arranged for an attorney to join appellant at the juvenile processing office if they had wished.

Family Code subsection 52.025(c) specifically provides as follows: "A child may not be left unattended in a juvenile processing office and is entitled to be accompanied by the child's parent, guardian, or other custodian or by the child's attorney." TEX. FAM.CODE ANN. § 52.025(c) (Vernon 2002). As the court in *Comer* concluded, I likewise conclude that we cannot say with any degree of confidence that if appellant had had access to his parents or his attorney, he would still have chosen to confess to the crime. *See Comer,* 776 S.W.2d at 197. Accordingly, applying the same causal connection analysis utilized by *Comer,* which the Court of Criminal Appeals cited as an example of an appropriate article 38.23 causal connection analysis in *Gonzales* and *Roquemore,* I conclude that appellant's statement should have been suppressed under article 38.23 of the Texas Code of Criminal Procedure.

For the foregoing reasons, and the reasons stated in our original *Pham* opinion, which I incorporate by reference, I would reverse the judgment and remand the cause to the trial court for further proceedings.

EVELYN V. KEYES, Justice, dissenting.

Because I believe the majority has misunderstood the Court of Criminal Appeals'

instructions to us on remand and has misconstrued and misapplied the law, I respectfully dissent.

A jury found appellant, John Tuy Pham, a juvenile certified to stand trial as an adult, guilty of murder and assessed punishment at confinement for life. Appellant argued on appeal that the judgment should be reversed because his confession was obtained in violation of section 52.02(b) of the Family Code, which requires prompt parental notification of the detention of a juvenile and the reason for the detention. By opinion dated December 28, 2000, we reversed the judgment and remanded the cause. *Pham v. State,* 36 S.W.3d 199, 205 (Tex.App.-Houston [1st Dist.] 2000), *vacated by* 72 S.W.3d 346 (Tex.Crim.App.2002). The Court of Criminal Appeals vacated our judgment and remanded for reconsideration in light of its opinion in *Gonzales v. State,* 67 S.W.3d 910 (Tex.Crim.App.2002). *Gonzales* held that, "before a juvenile's written statement can be excluded, there must be a causal connection between the Family Code violation and the making of the statement." *Pham,* 72 S.W.3d at 346; *see Gonzales,* 67 S.W.3d at 912. I believe the majority misconstrues the meaning of "causal connection," erroneously places the burden of proof on the defendant, and assesses the wrong factors in determining whether the confession of a juvenile should be excluded.

*Family Code Section 52.02(b) and Code of Criminal Procedure Article 38.23*

Appellant contends the officers who took him into custody did not comply with sec-

---

4. The evidence shows that the parents were not given an explanation, even though subsection 52.02(b) requires the officer promptly to give "a statement of the reason for taking the child into custody," in addition to notice that the child is in custody. TEX. FAM.CODE ANN. § 52.02(b) (Vernon 2002); *see Hampton v. State,* 86 S.W.3d 603, 609 (Tex.Crim.App. 2002).

tion 52.02(b) of the Family Code and therefore his confession must be suppressed. Section 52.02(b) states that "[a] person taking a child into custody shall promptly give notice of the person's action and a statement of the reason for taking the child into custody to: (1) the child's parent, guardian, or custodian; and (2) the office or official designated by the juvenile board." TEX. FAM.CODE ANN. § 52.02(b) (Vernon Supp.2004). Provisions of the Family Code control issues concerning juvenile confessions, although they are raised in a criminal forum. *Griffin v. State*, 765 S.W.2d 422, 427 (Tex.Crim.App. 1989); *Smith v. State*, 881 S.W.2d 727, 731 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). When a juvenile is in custody, strict compliance with the requirements of the Family Code is mandated. *See Roquemore v. State*, 60 S.W.3d 862, 872 (Tex. Crim.App.2001); *Comer v. State*, 776 S.W.2d 191, 194 (Tex.Crim.App.1989).

However, section 52.02(b) is "not an independent exclusionary statute." *Gonzales*, 67 S.W.3d at 912. Thus, a violation of section 52.02(b) does not make a juvenile's confession automatically inadmissible. *Id.* Rather, evidence obtained in violation of the Family Code is excluded through the operation of article 38.23(a) of the Code of Criminal Procedure. *Gonzales*, 67 S.W.3d at 913.[1] Article 38.23(a) provides that "[n]o evidence *obtained* ... *in violation* of any provisions of [state or federal law] shall be admitted in evidence" against a defendant in a criminal case. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2003) (emphasis added). However, "evidence is not 'obtained ... in violation' of a provision of law [unless] there is [a] causal connection between the illegal conduct and the acquisition of the

evidence." *Gonzales*, 67 S.W.3d at 912; *Schafer v. State*, 95 S.W.3d 452, 455 (Tex. App.-Houston [1st Dist.] 2002, pet. dism'd). Article 38.23 thus embraces the attenuation doctrine, which is a method for determining whether evidence was "obtained" in violation of law. *Johnson v. State*, 871 S.W.2d 744, 750–51 (Tex.Crim.App.1994). Under the attenuation doctrine, evidence whose acquisition is sufficiently attenuated from a violation of the law is not considered to be "obtained ... in violation" of law and need not be excluded. *Id.* at 750. Thus, an otherwise valid confession following an illegal detention will not be excludable under article 38.23 when it is determined that the taint of the illegality has dissipated by the time the confession was taken. *Gonzales*, 67 S.W.3d at 913, n. 10; *Comer*, 776 S.W.2d at 196. In such a case, the causal chain between the illegal arrest and the acquisition of the statement is broken. *See Bell v. State*, 724 S.W.2d 780, 788 (Tex.Crim.App.1986).

### Burden of Proof

When a juvenile defendant seeks to suppress a confession allegedly obtained in violation of section 52.02(b) of the Family Code, the burden of proof is initially on the defendant to show a violation of that section; once the defendant has shown a violation, the burden shifts to the State to prove compliance with section 52.02(b). *See Roquemore*, 60 S.W.3d at 869–70; *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim.App.1986). If after reviewing the defendant's evidence of a violation of section 52.02(b) and the State's evidence of compliance we find a violation of section 52.02(b), we must still determine whether the confession was "obtained" in violation of law, so that exclusion is necessary under article

---

1. The Texas Family Code expressly makes Chapter 38 of the Code of Criminal Procedure applicable to juvenile proceedings. *See* TEX. FAM.CODE ANN. § 51.17(c) (Vernon Supp.2004); *see also Le v. State*, 993 S.W.2d 650, 656 (Tex.Crim.App.1999).

38.23, or whether the taint of the section 52.02(b) violation is so attenuated that article 38.23 does not require exclusion. *See Roquemore,* 60 S.W.3d at 870.

### Violation of Section 52.02(b)

Appellant contends that the officers who took him into custody did not comply with the prompt notice provision of Section 52.02(b) of the Texas Family Code. Section 52.02(b)(1) requires that *"[a] person taking a child into custody shall promptly give notice of the person's action and a statement of the reason for taking the child into custody, to: (1) the child's parent, guardian, or custodian."* TEX. FAM. CODE ANN. § 52.02(b)(1) (emphasis added). Section 52.02(b) does not define the term "promptly." The issue presented, therefore, is whether notice from the officer at the juvenile holding facility to appellant's sister, approximately six hours after his arrest, or to his father more than seven hours after the arrest, was "prompt" notice to appellant's "parent, guardian, or custodian" within the meaning of section 52.02(b).

In deciding whether parental notification under section 52.02(b) was prompt, courts have considered (1) the length of time the juvenile had been in custody before parental notification; (2) whether notification occurred before or after the officers obtained a statement; (3) the ease with which the officers were able to contact the parent; and (4) the actions of the officers during the period of delay. *Vann v. State,* 93 S.W.3d 182, 185 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd); *but see In re J.B.J.,* 86 S.W.3d 810, 814–15 (Tex.App.-Beaumont 2002, no pet.) (observing that factors noted in *Vann* are "relevant considerations," but applying totality of circumstances test to determine whether notification was made with reasonable speed).

Here, appellant was detained at 2:35 p.m. He had been in custody somewhat less than 6 hours when his sister was notified of his whereabouts, at approximately 8:15 p.m., and 7 hours and 15 minutes when his father—the proper person to receive notice under the statute—was contacted, at approximately 9:50 p.m. No notice of the reason for his detention was given until the next morning. Meanwhile, the officers had taken appellant's statement at 4:38 p.m., two hours after his initial detention. The officers took appellant to be warned by a magistrate; took him to the downtown police station to be interrogated by an investigator, to whom he gave his statement; drove him to a juvenile processing facility to be processed, fingerprinted, and photographed; and, only afterwards, notified his sister of his whereabouts. The officers made no attempt whatsoever to notify appellant's parents of his detention until almost 10:00 p.m. When the parents were finally contacted, they were not given an explanation, even though subsection 52.02(b) requires that the officer promptly give the parents not only notice that the child is in custody but also "a statement of the reason for taking the child into custody." TEX. FAM. CODE ANN. § 52.02(b); *see Hampton v. State,* 86 S.W.3d 603, 609 (Tex.Crim.App. 2002). I would, therefore, find that appellant bore his burden of showing a violation of section 52.02(b).

By contrast, the State presented no evidence of its compliance with section 52.02(b). Instead, the State argues in its brief that the evidence supports the conclusion that appellant's parents were notified, at the earliest, when appellant was taken into custody at 2:45 p.m., based on Sergeant Gillane's testimony that he notified the high school principal of appellant's arrest about 2:45 p.m., and his understanding of school procedures. However, there is no evidence that the school actually noti-

fied, or even attempted to notify appellant's parents, and appellant's mother testified that no one from the school notified her. The trial judge found that there was no notice to appellant's family until 8:15 p.m., a finding that precludes our consideration of the State's argument that notice occurred earlier; and the evidence supports the trial court's fact finding that no one in appellant's family was notified until that evening. Moreover, even had the school notified appellant's family, the officers who took appellant into custody would not have been relieved of their statutory duty to give appellant's parents prompt notice of the detention and the reason for it.

The duty to notify a child's parent, guardian, or custodian belongs to the "person taking a child into custody," *i.e.*, Officers Hale and Parish, and their supervisor, Office Miller, in this case. TEX. FAM.CODE ANN. § 52.02(b). It was their responsibility to see to it that notice of appellant's arrest, with a statement of the reason for taking him into custody, was promptly given to appellant's parents and the official designated by the juvenile court. *See In re C.R.*, 995 S.W.2d 778, 783 (Tex.App.-Austin 1999, pet. denied) (parent must be notified that child has been taken into custody and the reasons why). The delegation of responsibility for notification may be delegated (as here) to another *officer*, but, once it is delegated, that officer must comply with section 52.02(b). *In re J.B.J.*, 86 S.W.3d at 815. Section 52.02(b) does not permit delegation of this responsibility to a non-officer. Nor, in my judgment, is notification of appellant's sister adequate; rather, the State's duty of notification was fulfilled only when appellant's *parents* were notified both of his detention and of the reason for it. *Cf. Vann*, 93 S.W.3d at 184–85 (notification of juvenile's adult cousin, who was adult most often at home in home where juvenile often resided satis-

fied section 52.02(b) requirement that "custodian" be notified).

What is striking about this case is that the arresting officers, and their supervisor, Officer Miller, did not consider it their responsibility to notify appellant's parents about his arrest. Officer Miller testified as follows:

Q. [Prosecutor]: As far as during the time period you had the defendant in your custody there, did you at any time talk with any family member of the defendant as far as where the defendant was and what was going on with the case at that point?

A. [Officer Miller]: No, I didn't.

Q. Subsequent to that did other officers do that?

A. Yes, they did.

Q. And who was that?

A. Officer Parham in the juvenile division contacted the defendant's sister at 8:15. And the Harris County juvenile probation contacted the defendant's father at approximately 9:50.

. . . .

Q. [Defense Counsel]: And I think you testified that you did not, and I may be wrong; but, you did not contact John Pham's parent, guardian or custodian once John Pham was taken into custody?

A. [Officer Miller]: I did not. It was done by Officer Parham in the juvenile division.

. . . .

Q. Okay. Well, when was John Pham taken into custody?

A. When he was picked up out at the school.

Q. And when did Officer Parham contact or when was Officer Parham alerted as to the arrest of John Pham and the necessity by Officer Parham to comply

with Sec. 52.02 of the Family Code relative to release or delivery to the court?

A. Officer Parham contacted the defendant's sister at 8:15 p.m.

. . . .

Q. And did you talk to Officer Parham yourself?

A. Nope, I did not.

Q. Who did, if you know?

A. Who talked to Officer Parham?

Q. Correct.

A. From our division? I don't understand. I am sure that many people talk to Officer Parham, but pertaining to what?

Q. Well, pertaining to this case who contacted Officer Parham for purpose of alerting him that a juvenile was in custody and that he needed to contact the child's parent, guardian or custodian, if you know?

A. I don't know.

Q. [A]s I understand your testimony the only time or the first time that a person with the juvenile authorities is contacted is when Officer Parham ... was contacted relative to John Pham at 8:00 o'clock or 8:15 or something along those lines.

A. Basically that would be correct. The defendant was arrested. He made a statement, a voluntary statement. He was transferred to the juvenile division who notified the defendant's family and also notified Harris County Juvenile Probation who then, I assume, although I don't know who did it, notified the juvenile courts and it happened within that chronological order generally speaking.

It is obvious from Officer Miller's testimony that he was under the impression the arresting officers had no duty to notify a child's parents upon a child's arrest. Officer Miller, one of the lead investigators in this murder case, apparently believed that the homicide division could hold appellant as long as necessary to interrogate him without any notice to appellant's parents—that it was the responsibility of juvenile officers to notify appellant's parents after homicide was finished with the interrogation and after homicide had transported appellant to the Mykawa Road juvenile processing office across town.

I would hold that section 52.02(b) of the Family Code was violated by the State's failure to give appellant's parents prompt notice of his detention and of the reason for it. The next step is to determine whether the violation caused the acquisition of appellant's confession to be obtained in violation of law, and therefore to be subject to exclusion under article 38.23, or whether the taint was so attenuated that exclusion was not required.

### Causal Connection and Attenuation of the Taint

The majority would place a burden on a juvenile who seeks to suppress a confession taken in violation of section 52.02(b) to establish a "causal connection" between the violation and his confession by proving (1) that he was aware of his right to have his parents present; (2) that he was aware they were not promptly notified; (3) that he asked to speak with his parents; and (4) that his parents *would have* attempted to contact him or an attorney *had* they been notified of his detention and the reason for it. The majority cites no authority for the startlingly onerous burden it creates for juvenile defendants; nor is there any; such a burden is wholly unprecedented.

Our task is not to determine the extent of appellant's knowledge of and insistence on his rights against the willful obstruction of those rights by the police to prove that

his confession was caused by their violations of law. A violation of section 52.02(b) having been found, our task is to determine whether appellant's confession must be excluded through the operation of article 38.23 or whether the taint of the illegal acquisition of confession was so attenuated that the causal chain was broken and the confession could not be said to have been obtained in violation of law.

Here, while no attempt was made to contact appellant's parents, as required by section 52.02(b), appellant was taken from school by the arresting officers to be warned by a magistrate and then taken directly to the downtown police station to be interrogated by an investigator, where he gave his confession. His parents were not notified of his detention until after he had been processed into a juvenile facility, more than seven hours after he had been taken into custody, and they were not told why he was there until the following morning. If there is nothing in the record to indicate that appellant was aware of his right of access to his parents, it is because the officers never informed him of that right and made no attempt to ensure that he was accorded it, even though *they*—not appellant—had the burden of informing appellant's parents of his detention and the reason for it. If there is nothing in the record to show that appellant was aware that his parents were not promptly notified, it is because he could have discovered that they were not notified only from the arresting officers, who alone had that information and who had him in custody. If there is nothing in the record to indicate what appellant's parent *would have done* had they been told before 10:00 o'clock at

night where their son was or, even then, why he was in custody, it is because counterfactual universes—those in which things did *not* happen—do not produce evidence of what *did* happen. But none of these considerations is material to our task of determining whether the taint of the section 52.02(b) violation had so dissipated that article 38.23 does not require exclusion of the illegally obtained confession.

To determine whether the taint has dissipated, we must conduct a taint attenuation analysis, utilizing the *four* factors from *Bell,* 724 S.W.2d at 788. *Comer,* 776 S.W.2d at 196–97; *see also Johnson,* 871 S.W.2d at 750. Those factors are: (1) the giving of *Miranda* warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Bell,* 724 S.W.2d at 788.

In similar although less egregious circumstances, the Court of Criminal Appeals held in *Comer* that detaining a juvenile defendant for three hours while officers obtained his confession before taking him to a juvenile processing facility violated section 52.02(a) of the Family Code.[2] 776 S.W.2d at 197. The court further concluded that the taint of officers' unlawfully detaining the juvenile appellant for approximately three hours to obtain his confession before taking him to either an authorized officer of the juvenile court or to a juvenile detention center had not dissipated at the time he gave his confession. 776 S.W.2d at 196. It observed:

> The record reflects appellant was fully cautioned by Justice of the Peace Mal-

**2.** Section 52.02(a) requires essentially that "a person taking a child into custody, without unnecessary delay and without first taking the child to any place other than a juvenile processing office," must release the child to a designated responsible adult, or bring the child before the official designated by the juvenile board or to a detention facility designated by the juvenile board or to a secure detention facility, or release him. Tex. Fam. Code Ann. § 52.02(a).

colm before he gave his statement. However, every other factor in the attenuation of taint analysis adopted in *Bell v. State, supra,* at 788, militates in favor of our conclusion appellant's confession was illegal: it was taken immediately upon his having been taken into custody, without intervening circumstances, by officers whose exclusive reason for failing to comply with § 52.02(a), *supra,* was to obtain the statement. We do not imply that the officers willfully violated the law in this case. Nevertheless, in taking upon themselves the decision to interrogate appellant, the officers usurped a function which Title 3 vests in the officer designated by the juvenile court. We cannot say with any degree of confidence that, had appellant been transported 'forthwith' to the custody of the juvenile detention facility, where he may have had access to, if not counsel, at least his parents ... he would still have chosen to confess his crime. Appellant's statement should have been suppressed under Article 38.23, *supra.*

*Comer,* 776 S.W.2d at 196–97.

Here, although appellant was taken into custody at 2:35 in the afternoon, appellant's parents were not notified about his arrest until almost 10 p.m., and it was not until the following morning that they found out why appellant had been arrested. During this time, appellant was taken before a magistrate and given his *Miranda* warnings, then taken to the police station to give his statement, and only then, after the statement was taken, transferred to a juvenile processing facility and processed. The record reflects that the arresting offi-

cers and their supervisor did not consider it their responsibility to notify appellant's parents about his arrest and did not attempt to notify them; they left that task to officials at the juvenile processing center to fulfill after processing was complete; even then, the State did not fulfill its duty to notify appellant's parents both of his detention *and* of the reason for it until the next day. The officers thus took it upon themselves to interrogate appellant without notifying his parents; and they held him in violation of his rights under the Family Code for a much longer time before fulfilling their duty under the Code than the officers in *Comer.*[3]

As in *Comer,* every factor in the attenuation of taint analysis adopted in *Bell v. State,* other than the giving of *Miranda* warnings, indicates that the taint had not dissipated. Rather, the fact that the arresting officers immediately took appellant to be interrogated at the police station without even attempting to notify his parents of his whereabouts or the reason for his detention supports the inference that appellant's detention and prompt interrogation without parental notice—the violation of section 52.02(b)—caused appellant to give the officers the confession they wanted. Appellant had an absolute right to have his parents or attorney accompany him in the juvenile processing office; yet he did not have that opportunity because his parents were not promptly notified.

As the Court of Criminal Appeals observed in *Roquemore,* "The Family Code seeks to strike a balance between the competing interests of public safety and child

---

**3.** As in *Comer,* the officers in this case also interrogated appellant before taking him to a juvenile processing facility. The majority finds, however, that appellant waived his right to object to interrogation by the arresting officers rather than by an officer designat-

ed by the juvenile court because he failed to object in the trial court to the officers' violation of section 52.02(a). I would not reach this issue because I would find a violation of section 52.02(b).

welfare." 60 S.W.3d at 872.[4] The balance is struck, in part, by limiting the investigative function of the police in juvenile cases. *Id.* We must give effect to the legislature's intent by requiring strict compliance with those provisions of the Family Code regarding the arrest of juveniles. *Id.* Here, the limitation placed by section 52.02(b) of the Code on the investigative function of the police was ignored. Appellant's parents should have been promptly notified shortly after their son's arrest so that they could have had an opportunity to join appellant at the juvenile processing office and could have arranged for an attorney to join appellant at the juvenile processing office if they had wished. *See Gonzales,* 67 S.W.3d at 911 (noting 5 to 6 hour delay that occurred after juvenile was processed into detention facility); *Hill v. State,* 78 S.W.3d 374, 382–84 (Tex.App.-Tyler 2001, pet. ref'd) (holding notice not prompt where officers waited 4 hours and 20 minutes before notifying mother, after defendant had confessed, and reversing case); *In re C.R.,* 995 S.W.2d at 782–83 (holding juvenile's confession inadmissible because of violation of Family Code Section 52.02(b) where no attempt was made to contact mother until after officers took juvenile to juvenile processing center, issued warnings, and took statement).

As in *Comer,* I could not say with any degree of confidence that, if appellant had access to his parents or his attorney, he would still have chosen to confess to the crime. *See Comer,* 776 S.W.2d at 197. Accordingly, I would hold that appellant's statement should have been suppressed under article 38.23 of the Texas Code of Criminal Procedure.

---

4. *Roquemore* reversed a decision of this Court that a Rule 52.02(a) violation did not require exclusion of the confession of a juvenile and expressly disapproved this Court's limiting *Comer* to its facts. 60 S.W.3d at 872.

I would reverse the judgment and remand the cause to the trial court for further proceedings.